WILLIAM T. BOGLEY *v.* MIDDLETON TAVERN, INC.
ET AL.

[No. 951, September Term, 1978.]

*Decided April 18, 1979.*

The cause was argued before THOMPSON, LOWE and
WILNER, JJ.

*William M. Nickerson* for appellant.

*Richard R. Beauchemin,* with whom were *Joel G. Fradin* and *Arnold & Beauchemin, P.A.* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

The novel presentation of this case beclouds the narrow issue of whether a negligent insurance agent may be held personally liable for the loss caused by his negligence. The trial took place in the Circuit Court for Anne Arundel County. The principal players were:

William T. Bogley of Bogley and Harting, Inc. (Bogley) — an insurance agent for, among others,

Aetna Casualty and Surety Company (Aetna) — which provided a limited business interruption fire insurance policy, through Bogley, to

Middleton Tavern, Inc. (Middleton) — an Annapolis restaurant owned and operated by members of the Hardesty family, which suffered a fire loss, only half of which was covered under the business interruption provision of the policy due to a 50% co-insurance clause for which it had neither bargained, nor of which it had been informed.

Middleton sued Bogley individually as its agent for breach of his agreement and negligence in failing to obtain proper insurance protection.[1] Middleton also sued Aetna, claiming Bogley acted as an agent of Aetna in the transaction, and that Aetna was liable for its agent's negligence and breach of agreement. A jury was called upon to decide those questions.

Aetna cross-claimed against Bogley and Bogley against Aetna, each alleging that if Middleton was entitled to recompense, the sole responsibility therefor should fall upon the other. By stipulation, the cross-claims were not submitted

---

[1]. The negligence alleged by Middleton (and presumably found by the jury), was the breach of a duty to properly advise Middleton as to the terms of Aetna's "Business Interruption" fire insurance policy:

"particularly the requirements of insurance to proper value and the existence of a pro rata penalty or deduction in the amount to be paid in the event of loss for failure to insure to value as required by the policy."

to the jury, but were to be decided by the court in the event of a jury verdict against both Aetna and Bogley. The jury did find against both defendants, and the bifurcation of factfinders appears to have contributed to the concerns expressed on appeal.

Under the jury's view of the facts, both Bogley and Aetna were liable. Presumably, in anticipation of deciding the cross-claims, the trial judge determined unprecedentedly, by inquiry of the foreman, that the jury had decided not only that

"Bogley was acting as an agent for [Aetna],"

but also that its verdict was arrived at on the basis of both the negligence and the contract counts.

To the extent divulged, the jury's findings of fact were adopted by the trial judge as his own when deciding the cross-claims. As interpreted by him:

". . . the jury found Bogley negligent and to be the agent of Aetna, with the result that Aetna became liable for its agent's wrongful conduct. There was not and could not be any other theory under the facts and Court's instructions for the jury to find Aetna liable, and in finding Bogley negligent and also the agent of Aetna the jury quite correctly under the Court's instructions found Aetna liable. This is the posture of the case in which the Cross-Claim for indemnity must be decided."

He then entered judgment in favor of Aetna against Bogley on both cross-claims.

Bogley has appealed, not contesting Middleton's right to recover, but submitting that such recovery should have been solely against Aetna. His attack is twofold. He contends first that Middleton's contract count against him should not have been submitted to the jury and, secondly, that because he was Aetna's agent, his tort liability inured solely to Aetna, as his principal.

— contractual liability to Middleton —

Contending that there was no evidence supporting

contractual responsibility of Bogley to Middleton, Bogley recites a rule set forth in *Burkhouse v. Duke,* 190 Md. 44, 46-47 (1948):

> " '. . . Whenever, upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as solely to bind the principal, unless it manifestly appears by the terms of the instrument that the agent intended to superadd or substitute his own responsibility for that of the principal.' "

This is more succinctly stated in 16 Appleman, *Insurance Law and Practice,* § 8832:

> "An insurance agent is not liable as an insurer where his principal is disclosed."

Looking to the evidence here, appellant then points out the evidence of his agency agreement and the insurance contract itself, resulting in an express jury finding that he acted as agent for Aetna.

Based upon such substantial evidence, and an expressed factual finding by the jury, appellant argues that he, as agent, is entitled to insulation from contractual liability to the insured because of the binding nature of his breach on his principal. Accepting appellant's premise that the principal-agent relationship must focus on Aetna and Bogley, appellant nonetheless loses. Analyzing that premise, we find that Aetna was a disclosed principal bound to the underlying contract transaction by the act of its agent. The injured party to a breach of agreement by the agent has a direct action against the principal. Appellant ends the liability chain at that point, failing to recognize that Aetna as principal may subsequently recover from him the losses incurred due to Bogley's negligent performance of his duties as an agent.

The general duties owed by an agent to his principal apply in the insurance agent-insurer context:

> "Insofar as the insurance company is concerned, an insurance agent must act in good faith, confine

his acts within the scope of his actual authority, obey his principal's instructions, and *use due care and reasonable diligence in the transaction of the business entrusted to him.* The agent is, as a general rule, liable to the company for the losses resulting approximately from a failure in or departure from such duties. Although an insurance agent may within his apparent or ostensible authority bind the company to risks which his instructions forbid him to assume, he is liable to the company if he issues a policy in violation of his instructions and thereby subjects the company to a liability which it has forbidden him to assume for it." 43 Am. Jur. 2d *Insurance* § 169 (footnotes omitted, emphasis added).

The jury's finding of Bogley's negligence in carrying out his duties as an agent in the questioned transaction, translate into a breach of his duty of care to his principal. Thus, Bogley may have set forth a correct analysis of the general principal-agent responsibility in a contractual breach with a third party, but he overlooks his personal liability to his principal occasioned by his breach of the agency relationship. Arguing the sole liability of Aetna as principal under the underlying contract, simply leaves Bogley paying Aetna on its cross-claim.

Bogley loses for similar reasons when the premise changes from Bogley as agent to the insurer Aetna, to Bogley as agent to the insured Middleton. *See Reserve Ins. Co. v. Duckett,* 240 Md. 591 (1965), appeal after remand, 249 Md. 108 (1968); *Medical Mut. Liab. v. Mutual Fire,* 37 Md. App. 706, 712-713 (1977). Maryland has held a broker or agent of insurance directly liable to an insured. In *Patterson Agency, Inc. v. Turner,* 35 Md. App. 651, 657 (1977), our Court recognized:

" 'It may be laid down as a general rule that a broker or agent who, with a view to compensation for his services, undertakes to procure insurance on the property of another, and who fails to do so, will be held liable for any damage resulting therefrom.' "

Though not explicitly stated, the cases following this rule generally follow an agent-principal analysis between the person seeking insurance and the broker or agent undertaking to procure the policy. The *Patterson* case typifies this:

"When, as here, the agent or broker fails to procure the insurance, and an intervening casualty occurs before the agent or broker can notify *his principal of non-availability so that insurance might be obtained from another,* the agent or broker is liable to the insured, his estate, or those claiming under him in the amount that would have been due under the policy had it been obtained." *Id.* at 657 (citations omitted; emphasis added).

The principal referred to is the insured in whose behalf the agent is acting.

In the present case, Mr. Hardesty testified that Bogley had first disclosed to him the possibility of purchasing business interruption insurance. After selling Mr. Hardesty on the idea, Hardesty left it with Bogley to handle the details of providing him coverage of $10,000 a month for six months.

"Q Did there ever come a time when you and he discussed insurance?

A Yes, there was.

Q When was that?

A Approximately late summer in 1971. We were fishing, and I had found out after the fire that, in fact, there were other insurances available to cover business losses and that was business interruption. We discussed it on the boat and arranged to meet at a later time to determine what. . .how much business interruption insurance was needed at Middleton Tavern.

. . .

Q Just how, then, did you decide on how much you needed to be insured for? What happened then?

A Mr. Bogley handled it at that point.

Q Well, what were your instructions to him at that point?

A That we needed coverage for $10,000.00 a month for up to six months. Those were the continuing expenses that we would incur. There was no profit, you know. We weren't . . . we weren't able to, as far as I knew, cover profit, but we were satisfied to at least be able to stay even and be able to meet our expenses.

. . .

Q Did there come a time when a policy was. . .let me show you this letter. Do you recognize that letter, Mr. Hardesty? [2]

A Yes, I do.

Q And who sent it to you?

A Mr. Bogley."

Bogley's own testimony would in part, also support an adequate inference that he was, as alleged, acting as Middleton's agent to obtain a business interruption policy. Included in that testimony was the inference that Bogley had sought to place the insurance with companies other than Aetna but

"[t]he only company that I talked to that would accept the risk was Aetna."

---

2

"December 7, 1971

Messrs. Bernard & Jerry Hardesty
Middleton Tavern
Annapolis, Md.

Dear Bo and Jerry:

Based on the info you gave me, I have obtained a quotation from the Aetna Life and Casualty for $60,000 Business Interruption Coverage with a $367 annual premium.

I would like to further our discussion of this type of coverage and will give you a call next week. If this is not convenient or you want to do it sooner, please give me a call at the above number.

Best wishes for the Holiday Season.

Cordially
William T. Bogley

WTB:mt"

In short, the evidence was inferentially sufficient from which the jury could have found that Bogley was first a broker and agent for Middleton to provide it the insurance protection it required. *See Sun Ins. Office v. Mallick,* 160 Md. 71, 82 (1931). As discussed in the Aetna-Bogley agency context, an agent owes his principal a duty of reasonable care and diligence in transacting his business. Middleton relied upon Bogley's recommendation to place it with Aetna for whom Bogley also operated as an agent under a written agreement. The evidence was clearly sufficient to permit a consideration of contractual liability of Bogley — as agent for Middleton — to provide proper insurance coverage and to place it with a reliable company. It was equally sufficient to warrant a finding that he had breached the terms of that agreement by negligently failing to procure proper insurance coverage to protect Middleton as it required.

An annotation dealing with a broker's failure to procure insurance, in 64 A.L.R.3d 398, 404, *et seq.,* makes it abundantly clear that nearly all cases deciding the issue have held that an insurance agent or broker may be the agent of a proposed insured for the purpose of causing a policy to be issued, and owes his principal a duty to exercise reasonable skill, care and diligence in effecting the insurance. Such an agent or broker who undertakes to procure insurance with a view to compensation for his services, will be liable for damages resulting from his fault and neglect in failing to do so. Every case in the annotation supports implicitly, if not explicitly, that general rule, *id.* at 410-411; Maryland proves no exception.

In *Lowitt v. Pearsall Chemical,* 242 Md. 245, 254-255 (1966), facing a similar issue, *id.* at 248, the Court of Appeals assessed the sufficiency of the evidence required to hold an agent responsible for failure to procure a policy. It established a substantial and defined degree of care and skill. The Court made it clear that an insurance agent who undertakes to provide a specified coverage is liable in damages for negligently failing to procure such insurance.

"We shall accept the degree of care and skill

suggested by Cohen in its brief, wherein it cites *Couch, Insurance* 2d, § 25:37, as follows:

> 'An agent, employed to effect insurance, must exercise such reasonable skill and ordinary diligence as may fairly be expected from a person in his profession or situation, in doing what is necessary to effect a policy, in seeing that it effectually covers the property to be insured, in selecting the insurer and so on.'

However, we add thereto, the same author's section 481 of *Couch, Insurance,* wherein he states:

> 'As a general rule, a broker or agent who, with a view to compensation for his services undertakes to procure insurance on the property of another, but fails to do so with reasonable diligence, and in the exercise of due care, or procures a void or defective policy ... is personally liable to his principal for any damages resulting therefrom. In fact, a broker taking money to secure insurance, who unjustifiably fails to secure the same, or to make an effort to do so, becomes liable, in case of loss, to pay as much of the same as would have been covered by the policy had it been secured.'

Judge Watkins stated the rule thus:

> 'An insurance agent who undertakes to secure a specified coverage is liable in damages to the applicant for failure to procure such insurance, and this liability extends to negligence as a result of which the specified risk is not included in the policy.' *Hampton Roads v. Boston Ins. Co.,* 150 F. Supp. 338 (D. C. Md.)."

*Id.* at 254-255.

This is an obvious recognition of the duty of one who sells insurance to the public to provide coverage that he had led his customer to believe he will provide, or has obtained, for him.

The jury could properly consider whether Bogley's negligent performance of his duties resulted in a failure to provide adequate coverage to Middleton. The "breach" Middleton could recover for was Bogley's duty of care in transacting Middleton's business. Under this theory, Middleton could have a direct action against Bogley. It follows that if the evidence warrants it, the jury may consider it.

Appellant argues that if he is held liable, his liability can extend only to the loss approximately caused by his conduct. He contends that Aetna would have accepted a policy correctly assessing Middleton's needs, and that he can only be held for the price difference between the premium of the policy issued and the policy needed to provide adequate coverage. He reasons that Aetna would have had the damage loss regardless, and is only injured by receiving the lower premium from the policy issued. Bogley's argument presupposes Aetna's willing acceptance of any policy, but the evidence presented was not so conclusive of the point.

Once the prima facie case of negligence has been made out, the burden shifts to the agent to defend. If so proven, the causal relation between the loss and his negligence is broken but for the premium difference. But the evidence that the policy would have been issued must be sufficient to overcome the empirically understood and judicially established premise, that an insurance company is under no obligation to accept an agent's application. *Edelstein v. Nationwide Mut. Ins.,* 252 Md. 455, 461-462 (1969); *American Casualty Co. v. Ricas,* 179 Md. 627 (1941).

There is in evidence Bogley's testimony that fire insurance was hard to obtain on restaurants, and that Aetna was the only company who agreed to take even the limited risk. This implies that Aetna would not have taken the higher risk. To overcome the inference that his negligence proximately caused Aetna the loss sustained, Bogley had the burden of

proving that the higher risk policy would have been accepted. He failed to meet the burden of convincing either factfinder.

— tort liability to Middleton —

Appellant argued that

"when an insured brings suit against an agent and insurer for loss under an insurance contract, combining theories of contract and tort, the agent's exposure to personal liability to the insured is not altered by special attention to the tortious nature of the contractual breach."

Appellant correctly recognized that where questions of contract and negligence causing a breach of that contract arise, the better analysis focuses on the contract question, *i.e.,* whether an agency relationship existed, whether the principal was disclosed, partially disclosed or undisclosed in the questioned transaction, and what authority was vested in the agent. When these elements are addressed in the cause of action, the breach of contract commands our attention once the causal negligence of the agent is ascertained.

If the parties wished to address the agent's negligent conduct under a tort theory, the proper focus would have been whether the Aetna-Bogley agency relationship constituted that of master-servant or independent contractor, and whether Bogley's conduct fell within the scope of his employment. *New England Ins. Co. v. Swain,* 100 Md. 558, 576-578 (1905). Bogley plainly remains on center stage under a tort cause of action, because traditional tort principles apply. The agency relationship simply adds the possibility of an extra defendant, the principal. If the principal alone is sued for an agent's tortious conduct, the same duties of an agent to his principal discussed earlier, would provide the employer with a vehicle for recompense.

Bogley bears the final liability for his conduct. He breached his duty of care to each principal in the negligent performance of his duties. While he asserted a mitigating defense to

alleviate a portion of that loss, he failed in his burden of proof. The judgment of the court below will stand.

*Judgment affirmed.*
*Costs to be paid by appellant.*