INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania Corporation, Plaintiff,

v.

Robert WATERHOUSE, M. D., Defendant and Third-Party Plaintiff,

v.

CHICAGO INSURANCE COMPANY, an Illinois Corporation, Third-Party Defendant and Fourth-Party Plaintiff,

and

COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts Corporation, Third-Party Defendant,

v.

Alfred L. MELI and Meli Insurance Agency, Inc., Fourth-Party Defendants.

Superior Court of Delaware, New Castle County.

Submitted Sept. 23, 1980.

Decided Dec. 4, 1980.

Richard K. Herrmann, Bayard, Brill & Handelman, P. A., Wilmington, for plaintiff, Insurance Co. of North America.

Allen M. Terrell, Jr., Robert J. Katzenstein, Richards, Layton & Finger, Wilmington, for defendant and third party plaintiff, Robert Waterhouse, M. D.

William J. Cattie, III, Howard M. Berg, Berg, Heckler & Cattie, P. A., Wilmington, for third party defendant and fourth party plaintiff, Chicago Ins. Co.

Carl Schnee, Schnee & Castle, Wilmington, for third party defendant, Commercial Union Ins. Co.

James F. Kipp and Robert K. Pearce, Trzuskowski, Kipp, Kelleher & Pearce, P. A., Wilmington, for fourth party defendants Alfred L. Meli and Meli Ins. Agency, Inc.

WALSH, Judge.

This declaratory judgment action requires a determination of the respective responsibilities of several insurers under various policies of liability insurance issued to the defendant and third-party plaintiff, Robert Waterhouse, M.D. The action has its genesis in an automobile accident which occurred on November 16, 1975, resulting in the deaths of Dr. Waterhouse's 18 year old son, John, and the driver of the other vehicle, John Bennett. Bennett's estate filed suit against the Estate of John Waterhouse as well as Dr. Waterhouse. That action was defended by various insurers, now parties to this proceeding: Insurance Company of North America (INA) which had issued a homeowner's policy to Dr. Waterhouse; Commercial Union Insurance Company (Commercial Union), under an automobile liability insurance policy issued to Dr. Waterhouse [1] and Chicago Insurance Company (Chicago), which had insured Dr. Waterhouse under a Professional Comprehensive Personal Catastrophic policy. The Bennett litigation was ultimately settled during trial for a total of $225,000, with INA and Chicago each paying $107,500 and Commercial Union contributing $10,000, the full coverage of the separate policy on John Waterhouse.

In addition to the competing claims of the insurers and Dr. Waterhouse's third-party assertions against Chicago and Commercial Union for their alleged failure to provide a defense to him in the Bennett action, the declaratory judgment proceeding embraces a Fourth Party Complaint by Chicago against Alfred L. Meli and the Meli Insurance Agency, Inc. (treated as an entity and hereinafter "Meli"). The gravamen of that Complaint is that Meli was negligent in its handling of Dr. Waterhouse's insurance coverage by arranging for separate Commercial Union coverage for John in the statutory minimum amount, thus creating a $90,000 gap in Dr. Waterhouse's primary insurance coverage (up to $100,000) with Commercial Union and exposing Chicago to additional risk under its comprehensive poli-

---

1. At the time of the accident, John Waterhouse and the vehicle he was operating were insured for the statutory minimum ($10,000/$20,000) under a separate policy issued by Commercial Union. This coverage is not directly in dispute and the proceeds were paid in settlement.

cy. Two aspects of this dispute now appear ripe for decision: Meli's motion to dismiss the Fourth Party Complaint and cross-motions for summary judgment by INA and Dr. Waterhouse on the question of whether INA's homeowner's policy provides coverage for negligent entrustment. These issues will be separately considered.

I

For the purpose of testing Meli's motion to dismiss, the allegations of Chicago's Fourth Party Complaint will be deemed undisputed. *Diamond State Tel. Co. v. University of Delaware*, Del.Super., 269 A.2d 52 (1970); *Plant v. Catalytic Construction Company*, Del.Super., 287 A.2d 682 (1972). Prior to July, 1975, John Waterhouse and the vehicle he operated on the night of the accident had been insured under a family combination policy issued by Commercial Union to Dr. Waterhouse, with $100,-000/300,000 bodily injury coverage. John Waterhouse had incurred a suspension of his driving privileges and when he became eligible for restoration of his license, it was necessary for him to demonstrate proof of financial responsibility as required by 21 *Del.C.* Ch. 29. To that end, Dr. Waterhouse consulted his agent, Meli. On or about July 11, 1975, Meli deleted the son and his vehicle from the Commercial Union family policy and placed coverage for John and his vehicle in a separate Commercial Union policy with minimum coverage.[2] As a result, on the date of the Bennett accident, John was insured under his father's comprehensive policy with Chicago, but without the benefit of the $100,000 Commercial Union primary coverage. Meli's attack upon the Fourth Party Complaint is twofold: that it owed no duty to Chicago but, if a valid cause of action is stated, Chicago's complaint, filed on December 19, 1979, runs afoul of the three year period of limitations imposed by 10 *Del.C.* § 8106.

Although Chicago does not claim that Meli acted in a capacity other than as Dr. Waterhouse's agent it argues that Meli had a duty to consider the effect of its advice on Chicago's potential exposure. In effect, Chicago contends that an insurance agent acting for an insured-principal is required to protect the interests of third-party insurers who may be affected by advice to to the insured. No authority is cited for this novel proposition and the Court's research has not added to the lore.

As a general rule, an insurance agent is required to exercise reasonable care, skill and diligence is discharging his responsibilities and may be held liable for any damage which results. *Bogley v. Middleton Tavern, Inc.*, 42 Md.App. 314, 400 A.2d 15 (1979). The agent must disclose to his principal all material facts bearing upon the character of the risk to which it might be exposed. 4 *Couch on Insurance* 2d § 26:346. But to impose a similar obligation as to other insurers with whom the agent is not in an agency relationship, vastly expands that duty. Even where a duty admittedly exists, its scope is limited. Under the Restatement view, an agent is not liable for economic loss to third persons when he negligently fails to perform duties owed his principal. *Restatement (Second) Agency*, § 357 (1958). This result follows even if the agent is considered as acting for both principal-underwriting and the insured. See generally, 43 *Am.Jur.2d*, Insurance, § 150.

It would appear that Chicago's theory of tort recovery might come closer to the mark were it directed against its insured, Dr. Waterhouse rather than his agent, Meli. If anyone had a duty to keep Chicago informed it was Dr. Waterhouse, since he was in direct privity with it. Meli may well have been negligent in failing to advise Dr. Waterhouse to inform Chicago of the change in coverage but such a cause of action would lie with Waterhouse, not Chicago. The general rule is that an insurance

---

**2.** Although the vehicle in question, a 1965 Buick, was purportedly transferred from Dr. Waterhouse to his son, certain requirements of the Delaware Motor Vehicle Code were not met and there is a dispute as to ownership. For present purposes, it will be assumed that there was at least a *de facto* transfer.

company may not recover for losses due to negligent injury to persons or property which it insures. *Prosser on Torts*, (4th Ed.) § 129 at 939. Unless the injury was intentional, recovery is limited to subrogation to the claim of the injured party. Since Dr. Waterhouse claims to have suffered no loss from failing to inform Chicago of the change in coverage, there is no injury to serve as the basis for subrogation. Merely raising the question of Meli's relationship to Chicago is insufficient to state a proper claim. *Slovin v. Gauger*, Del.Super, 193 A.2d 452 (1963). There must be an allegation that Meli intentionally increased the potential burden on Chicago, an assertion which is absent in the Fourth Party Complaint.

Chicago has expanded on the theory of tort recovery set forth in its complaint to urge other grounds of recovery. Assuming that the complaint can be read to accommodate these arguments, they are equally unavailing. Chicago argues that by cancelling John Waterhouse's existing coverage under his father's policy and failing to provide equal insurance coverage, Meli became the primary insurer. Proceeding from this premise, Chicago claims a right to indemnity on the basis of its payment in settlement of the Bennett case. In other words, it claims to have discharged the duty of the primary insurer (Meli) and now has a right to indemnification.

■ Generally, a right to indemnity arises by contract, although equitable grounds have been recognized. 41 *Am. Jur.2d*, Indemnity, § 2; 16 *Couch on Insurance* 2d, § 62:185. Concededly, Meli did not expressly contract to become a primary insurer and it is doubtful if such a status can be achieved through negligence. As noted above, an insurance agent is liable for damage resulting from failure to discharge his duties properly but he does not thereby become a primary insurer. *Zurich Insurance Co. v. New Amsterdam Casualty Co.*, 117 Ga.App. 426, 160 S.E.2d 603 (1968), relied upon by Chicago involved an interpretation of two existing insurance policies. Nothing in the Court's opinion supports

Chicago's basic premise that negligence by an insurance agent will make him liable as a primary insurer so as to give rise to indemnity rights.

Chicago next argues that Meli tortiously interfered with the contract between it and the Waterhouses. Again, there is no allegation that Meli intentionally interfered. Its conduct must be viewed in terms of negligence and this limitation is fatal. The Restatement (Second) Torts, § 766C (1979) provides in pertinent part:

> "One is not liable to another for pecuniary harm not deriving from physical harm to the other, if that harm results from the actor's negligently
>
> (a) causing a third person not to perform a contract with the other, or
>
> (b) interfering with the other's performance of his contract or making the performance more expensive or burdensome, or"

Nor is Chicago's position aided by reliance upon the rule permitting recovery for the negligent dissemination of information by one in a professional or quasi-professional position. Section 552(2)(a)(1977) of the *Restatement (Second) Torts*, extends such liability for losses suffered by "a limited group of persons for whose benefit and guidance [the supplier] intends to supply the information or knows that the recipient intends to supply it." Clearly, Chicago cannot bring itself within the protected class.

Alleging that it enjoys the status of a third-party beneficiary, Chicago next argues that the removal of John Waterhouse from Dr. Waterhouse's larger Commercial Union policy deprived Chicago of the protection of that policy. In support of its argument, Chicago cites the case of *Eschle v. Eastern Freight Ways, Inc.*, 128 N.J.Super. 299, 319 A.2d 786 (1974), which held that an insurance agent who failed to procure coverage requested by his client could be held liable to a third-party, injured by the client, under a third-party beneficiary theory. That case merely exemplifies the general rule as to agent liability for failure to follow an insured's instructions and is grounded on the rationale that members of

the public who are deprived of a source of payment for an insured's negligent acts may assert a third-party claim against the agent responsible for the absence of insurance. See generally, Annot., 64 *A.L.R.3rd* 398. Clearly, that is not this situation. There is no allegation that Meli failed to follow an express direction to procure additional insurance to cover John Waterhouse and Chicago is not a member of the foreseeable group for whose protection the insurance contract was to be secured.

■ It is settled in Delaware that a third-party may recover on a contract made for his benefit. *Royal Indemnity Co. v. Alexander Industries, Inc.*, Del.Super., 211 A.2d 919 (1965). *Astle v. Wenke*, Del.Super., 297 A.2d 45 (1972). But in order for there to be a third party beneficiary, the contracting parties must intend to confer a benefit. *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, Del.Super., 312 A.2d 322 (1973). There is nothing to indicate that Dr. Waterhouse obtained the original policy with Commercial Union in order to benefit Chicago. Indeed, that policy was in effect prior to the issuance of the Chicago policy.

Clearly, Chicago was not a donee beneficiary. Similarly, it cannot be deemed a creditor beneficiary because no duty was owed by Dr. Waterhouse to Chicago which was to be discharged through the contract with Commercial Union. Cf. *Blair v. Anderson*, Del.Super., 325 A.2d 94 (1974). Although the policy issued by Chicago required Dr. Waterhouse to maintain specified minimal liability coverage on the automobiles he owned, that obligation was a condition precedent to Chicago's duty under the policy it issued to Dr. Waterhouse. Chicago's remedy, if any, is to decline coverage as to Dr. Waterhouse not to seek recovery against Meli with whom it was not in privity. At best, Chicago was an incidental beneficiary, whose status confers no right to enforce the contract. 17 *Am.Jur.2d*, Contracts, § 307.

Finally, Chicago argues that, in the absence of direct liability, its asserted cause of action against Meli arises from subrogation through the Estate of John Waterhouse and Dr. Waterhouse. The focus here is upon the claims the Waterhouses may have asserted against Meli which resulted in financial detriment to Chicago. The claim of subrogation as it applies to the Estate of John Waterhouse is quickly addressed. Chicago did not insure John Waterhouse nor did it purport to defend the interests of his Estate. Its payment toward the Bennett settlement was tendered on behalf of Dr. Waterhouse, as the stipulation of settlement expressly recites.

While Chicago and Dr. Waterhouse were in an insurer-insured relationship, its claim of subrogation must rest upon the conduct of Meli, *vis-a-vis*, Dr. Waterhouse. Chicago argues that Meli gave Dr. Waterhouse improper advice thus creating the $90,000 insurance gap. But Dr. Waterhouse has suffered no financial harm as a result of Meli's advice and has filed no claim against Meli in this action. While Meli's advice resulted in shifting of responsibility among various insurers, it did not deprive Dr. Waterhouse of the total coverage he had before Meli's advice. In short, if Chicago has sustained a loss it must state a direct claim for that loss and abide the merits of that claim. It cannot construct a loss which Dr. Waterhouse did not sustain in an effort to secure subrogation.

■ In sum, Chicago cannot recover against Meli under any theory advanced by it, in the absence of an allegation of intentional interference with the insurer-insured relationship between Chicago and Dr. Waterhouse. The facts underlying the Fourth Party Complaint admit of no inference of intentional wrongdoing on Meli's behalf. The motion to dismiss the Fourth Party Complaint must be granted. In view of this ruling, it is unnecessary to consider the merit of Meli's affirmative defense of Statute of Limitations.

II

Cross-motions for summary judgment on the part of INA and Dr. Waterhouse have raised the issue of whether the homeowner's policy, issued by INA, provides cover-

age to Dr. Waterhouse under a claim of negligent entrustment. INA had agreed to provide a defense to Dr. Waterhouse in the Bennett suit, subject to a reservation of the right to contest coverage through the medium of this action. The precise issue for resolution, therefore, is whether an insurer, under a homeowner's policy of insurance, is required to provide a defense and coverage to an insured who is sued for alleged negligent entrustment of an automobile, in the face of a stated policy exception which excludes coverage for bodily injury claims arising out of the use of motor vehicles owed by the insured. The question is one of first impression in this State.

Although, as previously noted, there is an ongoing dispute over whether Dr. Waterhouse effectively transferred ownership of the 1965 Buick to his son prior to the accident, the resolution of that question is not required in order to resolve the coverage issue since the term "insured" as defined in the INA policy includes not only the name insured but all relatives of the named insured residing in his household. It is not disputed that John Waterhouse resided in his father's house at the time of the accident.

The INA homeowner's policy extends liability coverage under a section entitled "Comprehensive Personal Liability and Medical Payments", Coverage E of which provides:

"A. Coverage E, Personal Liability. This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damage because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. . . ."

Under the exclusion provisions of the policy, the coverage is limited in several particulars, including the following:

"II. Exclusions

A. Under Coverage E, Personal Liability, and Coverage F, Medical Payments to Other:

This policy does not apply:

1. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

\* \* \* \* \* \*

b. any motor vehicle owned or operated by, or rented or loaned to any Insured."

INA argues that, regardless of the nature of the tort liability asserted against Dr. Waterhouse, if the incident which gave rise to liability emanated from the ownership or operation of a motor vehicle, coverage is excluded. To the contrary, Dr. Waterhouse contends that the negligent entrustment claim involves a judgmental tort, with the chattel involved merely an incidental circumstance of the tortious conduct. Each side is able to point to a respectable line of recent decisions in support of its policy interpretation.

The authorities relied upon by INA embrace a simple and straightforward coverage interpretation: homeowner's insurance is intended to cover risks attendant upon home and related activities, while automobile liability insurance is designed to provide basic coverage for all risks inherent in the use and ownership of motor vehicles. This "dovetail" approach is premised upon the principle that the insured must look to the basic protection provided by the specific insuring agreement designed to cope with the risk inherent in automobile operation, with homeowner's protection available only to cover all other general or unspecified risks.

A recent exposition of the theory disallowing coverage may be found in an Alabama decision construing policy provisions identical to that found here. In *Cooter v. State Farm Fire and Casualty Co.*, Ala., 344 So.2d 496 (1977), the Alabama Supreme Court, by majority decision, denied homeowner's coverage for a claim of negligent entrustment arising out of an accident involving a vehicle owned by the father-insured but operated by his son. While it rejected the dovetailing theory of exclusion, the majority in *Cooter* determined that recovery under a claim of negligent entrustment requires a concurrence of dual ele-

ments—negligent entrustment of the instrumentality by the owner, coupled with negligent use by the entrustee. The Court noted that the latter element, negligent use, "is the very condition . . . that must be proved in fixing liability against the insured under the negligent entrustment doctrine." *Cooter*, 344 So.2d at 499. To extend coverage, the Court reasoned, would fly in the face of clear and unambiguous language to the contrary.

Other jurisdictions have disallowed coverage either under a dovetailing theory or use of the instrumentality approach. *Hanover Ins. Co. v. Grondin*, N.H., 402 A.2d 174 (1979) (upholding a watercraft instrumentality exclusion); *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978); *Lumbermen's Mutual Casualty Co. v. Kosies*, 124 Ariz. 136, 602 P.2d 517 (1979); *Fox Hills Country Club, Inc. v. American Insurance Co.*, Ark., 570 S.W.2d 275 (1978) (airplane exclusion); *Federal Insurance Co. v. Forristall*, Tex.Civ. App., 401 S.W.2d 285 (1966). *Gargano v. Liberty Mutual Insurance Co.*, Fla.App., 384 So.2d 220 (1980); *State Farm Fire and Casualty Co. v. McGlawn*, 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980); *Great Central Insurance Co. v. Roemmich*, S.D., 291 N.W.2d 772 (1980).

Those decisions which have extended homeowner's coverage to negligent entrustment of automobiles have done so by separating the judgmental act of entrustment from the operation of the automobile since, in fact, those two factors may occur far apart in time and place. In *Upland Mutual Insurance, Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974), the Court viewed the rationale of negligent entrustment liability to be founded upon the primary negligence of the entrustor and not upon the negligence of the driver. So viewed, the Court considered the claim "not directly related" to the ownership, operation or use of a motor vehicle and the automobile exclusion not controlling. Other jurisdictions which have permitted coverage under similar reasoning include: *Republic Vanguard Insurance Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973); *Douglass v. Hartford Insurance Co.*,

602 F.2d 934 (10th Cir. 1979) (applying Colorado law); and *Lalomia v. Bankers & Shippers Insurance Co.*, 35 A.D.2d 114, 312 N.Y. S.2d 1018 (1970), aff'd., 31 N.Y.2d 830, 339 N.Y.S.2d 680, 291 N.E.2d 724 (1972) (motorized bicycle operated by 12 year old boy).

The parties disagree concerning whether New Jersey has aligned itself with the decisional school permitting coverage under a homeowner's policy. In *McDonald v. Home Insurance Co.*, 97 N.J.Super. 501, 235 A.2d 480 (1967), the Court required a homeowner's insurer to extend coverage to the parents of an "unemancipated infant son" who were sued for permitting their son to acquire an automobile with knowledge of his dangerous propensities. It was not alleged that the parents owned, operated or used the automobile and the Court considered that fact significant in ruling the action against the parents did not arise out of ownership or operation of an automobile. In a later New Jersey case, also from the Appellate Division, *Westchester Fire Ins. Co. v. Continental Ins. Co.*, 126 N.J.Super. 29, 312 A.2d 664 (1973), the Court ruled that an automobile liability policy, not a homeowner's policy containing an automobile exclusion, was the sole source of coverage available to parents sued for negligent supervision of a passenger's son who threw an object from an automobile. The Court, in effect, adopted a "dovetailing" approach to resolve the question of competing coverage.

■ The most recent pronouncement from New Jersey adopts the dovetailing rationale of *Westchester* in denying homeowner's coverage to parents sued for negligent supervision in permitting their minor children to occupy an automobile parked in a driveway. *Bartels v. Romano*, 171 N.J. Super. 23, 407 A.2d 1248 (1979). The Court distinguished *McDonald* on the ground that there was no issue of competing coverage nor was it alleged that ownership or use of an automobile was asserted as a ground recovery against the McDonald parents. It would appear that under New Jersey decisional law, at present, a homeowner's policy exclusion for automobile-based claims in-

volving negligent entrustment or supervision would be recognized in the presence of competing automobile liability coverage.

While the disallowance of coverage cases are numerically more numerous, they also are the better reasoned from the standpoint of insurance contractual principles. A homeowner's policy is a personal comprehensive liability policy which is designed to protect against risks which are home-oriented. It is comparatively low in cost and intended to insure against non-business and non-automobile risks. Appleman, *Insurance Law and Practice* (Berdel ed.), § 4501.-02. The coverage extended through a homeowner's policy is intended to be comprehensive because the risks involved tend to be general. The public liability features of such policies are usually engrafted upon, and are incidental to, basic property protection against fire and casualty losses. While the contemplation of the parties to a pre-printed contract of insurance is a nebulous concept and one usually invoked after a claim has arisen, it is a reasonable assumption that a purchaser of homeowner's insurance does not obtain such insurance to protect him from the ordinary risks inherent in the ownership or operation of an automobile. This is particularly true where, as here, the insured has separately purchased substantial automobile liability coverage. Certainly, the insurer in the setting of its rates and in the selection of explicit exclusion language in its policy did not thereby intend to subject itself to protecting the insured from claims arising out of the operation of an automobile by the insured and members of his household.

Admittedly, the tort of negligent entrustment involves conduct which, in part, is distinct from the operation of the instrumentality which inflicts the harm. It is the negligent entrusting which creates the unreasonable risk, although the magnitude of the harm may depend upon the dangerous character of the product entrusted. See, *Prosser*, Law of Torts (4th Ed.) p. 678. It is not difficult to envision situations in which the type of instrumentality entrusted, (e. g., a gun or explosives), squares with the insurer's obligation to defend claims asserted against a parent-entrustor under a policy of general liability. But where the parties to a policy of general risk insurance agree to the specific exclusion of an instrumentality which, in operation and usage, is the predominant source of public liability claims, the focus changes. Regardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the chosen instrumentality—the automobile. It is this use which is specifically proscribed and, in the normal expectation of the parties to the insuring agreement, separately insured. While it is laudable to attempt an expansive reading of the policy in an effort to provide the insured with maximum coverage, the clear language of the exclusion cannot be tortured to achieve that result.

Chicago, which has allied itself with Dr. Waterhouse in an effort to require INA to extend coverage to the accident, argues that the homeowner's policy must be separately construed as it affects the interests of Dr. Waterhouse and his son and, when so considered, yields differing results. The argument runs that since the automobile was actually owned by John Waterhouse who was fortuitously residing in his father's home, Dr. Waterhouse should not be denied coverage under the automobile exclusion even if the provision bars coverage to his son. This argument overlooks the exclusion use of the word "any" in defining the insured. Moreover, it is clear that the thrust of the negligent entrustment claim was directed to Dr. Waterhouse's ownership and control of the automobile—the instrumentality which produced the harm. Given the peculiarities of this factual pattern, there is no basis for the separate consideration of the rights of the insured. Cf. *Steigler v. Insurance Company of North America*, Del. Super., 384 A.2d 398 (1978).

Equally without merit is Chicago's argument that INA, by continuing to use the policy language construed adversely to it in the *Lalomia* case, *supra*, has tacitly accepted the adverse interpretation and is now bound by it. As previously noted, there is a contrariety of judicial opinion, nationwide,

on the meaning of the automobile exclusion language at issue in this case. The *Lalomia* case, in addition to is factually dissimilarity reflects a view, perhaps a minority one, which this Court finds unpersuasive.

For the reasons stated, I conclude that the automobile exclusion provision of the INA homeowner's policy precludes coverage of the claim of negligent entrustment asserted against Dr. Waterhouse in the Bennett action. This ruling, however, does not end the matter. Dr. Waterhouse contends that, even if the exclusionary language of the policy is sustained, INA is estopped to deny coverage due to the nature of the disclaimer letter issued by its claims manager when it agreed to provide Dr. Waterhouse with a defense in the Bennett action. A motion by Dr. Waterhouse to amend his answer in this declaratory judgment action to restate this contention is pending. A

resolution of the merits of the estoppel and/or waiver contention must await further events.

### III

In summary, the Fourth Party Complaint against Meli must be dismissed for failure to state a valid cause of action. INA's motion for summary judgment is granted, in part, as to the applicability of the automobile exclusion clause but, on the present record, its ultimate liability cannot be finally determined. IT IS SO ORDERED.