176 F.Supp.2d 239 (2001)
MANCHESTER EQUIPMENT CO., INC., Plaintiff,
v.
AMERICAN WAY MOVING & STORAGE CO., INC., predecessor corporation to HTS Selling Corp., Louderback Transportation Co., Inc., predecessor corporation to HTS Selling Corp. and HTS Selling Corp., successor corporation, Defendants.
No. CIV.A. 99-351GMS.
United States District Court, D. Delaware.
December 11, 2001.
*240 Neil Raymond Lapinski, Swartz, Campbell & Detweiller, Anthony A. Figliola, Jr., Figliola & Facciola, Wilmington, DE, for Plaintiff.
Patricia Pyles McGonigle, Seitz, Van Ogtrop & Green, Wilmington, DE, of counsel: George W. Wright, Hackensack, NJ, for Defendants.

MEMORANDUM AND ORDER
SLEET, District Judge.

I. INTRODUCTION
In June 1999, Manchester Equipment Corporation ("Manchester") commenced this action against American Way Moving and Storage ("American Way"), HTS Selling Corporation (American Way's predecessor corporation), and Louderback Transportation (HTS's predecessor corporation). Manchester, a seller of computer equipment, alleges that it left valuable computers intended for delivery to Time Warner with American Way for storage and safekeeping. Manchester further maintains that American Way negligently allowed a third party ("David Lancaster") to obtain the Time Warner computers. Although "David Lancaster" told both Manchester and American Way that he *241 was a Time Warner employee, it was later discovered that he was not and never was employed there.
Presently before the court is American Way's motion for summary judgment. In this motion, American Way contends that it owed Manchester no duty in either tort or contract, and it did not breach any duty it may have owed. American Way also argues that Manchester is estopped from asserting its claims because Manchester's conduct started the claim of events that culminated in the loss of the computers. Because there are no genuine issues of material fact and the court finds that American Way is entitled to judgment as a matter of law based on the uncontroverted facts, the court will grant American Way's motion for summary judgment for all defendants.

II. BACKGROUND
Manchester is a New York corporation that sells computers to various companies across the nation. In late May or early June 1997, Manchester received a call from a man calling himself "David Lancaster" who stated that he was a Vice-President at Time Warner and wished to purchase computers. At this time, Time Warner had been a Manchester client for about six or seven years. Since no one at Manchester had ever dealt directly with "David Lancaster," Manchester's sales manager called some of his contacts at Time Warner and Toshiba.[1] These persons verified that there was indeed a David Lancaster employed at Time Warner. Reassured, Manchester agreed to complete the sale.
On June 4, 1997, "David Lancaster" sent Manchester a purchase order for several computers. Manchester estimates the value of the computers at $496,250.00. Manchester's invoices indicate that the purchaser was "Time Warner Communications/David Lancaster." However, Manchester never discussed payment arrangements with "David Lancaster." The purchase order directed Manchester to ship the computers to the "Time Warner Distribution Center" located at 700 A Street in Wilmington, Delaware.
Unbeknownst to Manchester, there was no "Time Warner Distribution Center" located at the 700 A Street address in Wilmington. At the time in question, 700 A Street was the address of the American Way warehouse. On June 4, 1997  the same day he sent his purchase order to Manchester  Lancaster called American Way's 700 A Street warehouse. Similar to his transaction with Manchester, he indicated that his name was David Lancaster and he was a Time Warner Vice-President. Lancaster entered into a contract with American Way to lease warehouse space for computers and office equipment. Since American Way had previously engaged in transactions such as this and nothing about "David Lancaster" appeared suspicious, no one at American Way thought there was anything unusual about the transaction. On June 6, Lancaster wrote American Way and stated that his drivers would pick up the computers shortly after they arrived.
Manchester arranged to have the computers shipped to the 700 A Street address. The bills of lading and invoices listed the recipient as "Time Warner" or "Time Warner Distribution Center." The bills of lading all contained clauses obligating the carrier to carry the goods to their destination.[2] The name American Way *242 does not appear on either the invoices or the bills of lading.
American Way received the computers on June 9, 12, and 19, 1997. An American Way employee signed a freight bill for one of these shipments to acknowledge receipt.[3] When the American Way employees saw that the boxes were marked "Time Warner Distribution Center," they placed them in the space previously rented by Lancaster. Lancaster's drivers arrived at American Way on June 10, 13, and 19, 1997 and removed the computers. American Way never asked the drivers for identification. Furthermore, it never asked the drivers to sign a bill of lading. However, American Way did have the drivers sign its "Warehouse Supplemental Listing," an internal form used by American Way.
At some point after Lancaster's drivers obtained the computers, Manchester realized that it had not received payment. It was at this point that Manchester discovered that "David Lancaster" did not work at Time Warner and learned of the existence of American Way. Although Time Warner paid Manchester roughly $100,000.00, Manchester has never recovered the full purchase price for the computers.

III. PARTIES CONTENTIONS
American Way advances three basic arguments as to why it should not be liable for Manchester's loss. First, American Way states that it owed Manchester no duty under either tort or contract. American Way asserts that there was no contract because there are no documents on which both American Way's and Manchester's names appear evincing an agreement between the parties. Further, without a contract or some agreement, there can be no duty in tort. Second, American Way argues that even if it had a duty to Manchester, the duty was not breached because, under the circumstances, American Way was entitled to believe  as did Manchester  that the man calling himself David Lancaster was indeed a Time Warner employee. Finally, American Way argues that Manchester should be estopped from holding American Way liable for the loss since it was Manchester who first sold the computers to Lancaster, thus occasioning the loss.
Manchester claims that there was privity between the parties because the papers involved in this transaction (invoices, freight bills, and bills of lading) created a bailment contract on Manchester's behalf. In the alternative, Manchester asserts that a duty can arise even in the absence of privity. Manchester further claims that American Way breached its duty as a bailee when it released the computers to persons who were not Time Warner employees without making them sign the bills of lading. Manchester submits the report of its expert on warehousing which indicates that failure to get a signed bill of lading before releasing goods is a breach of standard warehousing industry practice. American Way counters by asserting that even if it had the strictest security measures in place, those measures would not have prevented Manchester's loss.

IV. STANDARD OF REVIEW
Summary judgment is appropriate where the moving party establishes that *243 there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See FED. R.CIV.P. 56(c); Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir.1998). Material facts are determined by the substantive law governing the case. See Chandler v. City of Newark, No. CIV.A. 99-688, 2001 WL 902209, at *1 (D.Del. July 31, 2001). An issue is genuine if a reasonable jury could return a verdict in favor of the nonmoving party based on the evidence presented. See Connors v. Fawn Mining Corp., 30 F.3d 483, 489 (3d Cir. 1994). The non-movant must present evidence that clearly demonstrates a factual dispute. See Boyle, 139 F.3d at 393 (citing Matsushita Electric v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (noting that there must be more than "metaphysical doubt" regarding material facts)). Although the court reviews the evidentiary record, at the summary judgment stage, it is not the court's function to weigh the evidence and determine the truth of the matter but rather to determine whether there is a genuine issue for trial. See Lewis v. State of Delaware Dept. of Pub. Instruct., 948 F.Supp. 352, 357 (D.Del.1996) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In making this determination, the court must view all facts and resolve all inferences in the light most favorable to the party opposing the motion. See Chandler, 2001 WL 902209, at *1.

V. DISCUSSION
Although Manchester asserts that there are genuine issues of material fact, the court disagrees. Manchester has not clearly demonstrated that there is a genuine dispute regarding the material facts. See Boyle, 139 F.3d at 393. Upon review of the briefs and supporting materials, both parties appear to agree on the relevant facts as outlined in this opinion. Neither party disputes that Manchester contracted with Lancaster who subsequently contracted with American Way. Neither party disputes that until Lancaster absconded with the computers, there was no contact between them. Neither party disputes that the relevant papers in this case (bills of lading, invoices, et al.) exist. Neither party disputes that American Way did not ask Lancaster's drivers sign a bill of lading. It is clear, then, that the parties agree on the relevant facts  each party is merely arguing that these facts should be interpreted in a certain way. Therefore, the court concludes that there are no genuine issues of material fact. The only remaining question for the court is whether, based on these undisputed facts, American Way is entitled to judgment as a matter of law. For the reasons outlined below, the court finds that American Way is entitled to judgment as a matter of law and will grant summary judgment for American Way and its co-defendants. The court will discuss contractual and tort duties first, followed by a discussion of estoppel.

A. Contractual Duty[4]
Contrary to Manchester's assertion, there was no contract between Manchester *244 and American Way.[5] Under Delaware law, a contract is "an agreement for a valuable consideration to do or not to do a particular thing." Terry v. Parsons, 102 A. 985, 987 (Del.Super.Ct.1918). See also Rash v. Equitable Trust Co., 159 A. 839, 840 (Del.Super.Ct.1931) (same); Palmer v. Lodge, 109 A. 125, 127 (Del.Super.Ct.1919) (same). An agreement is "the meeting of the minds of the parties to the contract in the same intention." Stuckert v. Cann, 111 A. 596, 597 (Del.Super.Ct.1920).
The record supports the conclusion that there was never any express agreement between Manchester and American Way. Since the parties are not alleging that there was an oral contract, there must be some written evidence of their agreement. However, there are no documents in the record on which the names American Way and Manchester appear simultaneously. Furthermore, although there are two contracts involved in this case, neither one names both Manchester and American Way as parties. Manchester signed a contract with "David Lancaster" agreeing to ship the computers to the American Way warehouse. Subsequently, "David Lancaster" signed a contract with American Way to lease warehouse space to store the computers. Thus, although both parties contracted with David Lancaster, there is no evidence that they contracted with each other.
Furthermore, the fact that American Way and Manchester had no interaction until after the relevant events had taken place is further evidence that the minds of the parties never met. Each party admits that it had no contact with the other prior to the loss of the computers. The record supports this conclusion. None of the documents between American Way and Lancaster mention Manchester. None of Manchester's forms make reference to American Way by name. The fact that these parties had no dealings with each other makes it extremely unlikely that a meeting of the minds occurred between them. Since there was no meeting of the minds, there can be no agreement and, therefore, no contract.
Manchester also argues that a contract existed because an American Way employee signed the freight bill when American Way received the computers from Manchester's shipping company. This argument must also fail. Although Manchester has proven that an American Way employee signed a freight bill concerning the computers, Manchester fails to demonstrate how that signature created an agreement between it and American Way. When examined in context, the signature on the freight bill should be interpreted merely as acknowledging the receipt of the goods. There is no language in the freight bill that requires American Way to assume a duty to Manchester upon receipt. Although Manchester argues that the freight bill incorporated the terms of the bills of lading by reference, Manchester provides no legal support for that conclusion. (D.I. 8-9).[6] Therefore, the mere presence of a *245 signature without more is insufficient to establish that American Way reached an agreement with Manchester. Without evidence of such agreement, the court cannot hold that the signature alone created a contract.[7]
Neither is there an implied contract. An implied contract arises where one party receives a benefit from another such that the law will presume a promise on the part of the benefitted party to pay a reasonable price for the benefit. See Palmer, 109 A. at 127. However, implied contracts can only be created where it is clear that the parties, through their conduct, intended that such a contract be created. See Creditors' Committee of Essex Builders, Inc. v. Farmers Bank, 251 A.2d 546, 548 (Del.1969).
As an initial matter, it is unclear what, if any, benefit was bestowed upon American Way as a result of this transaction. It received no remuneration or services from Manchester for storing the computers. In fact, the only party to give American Way anything for storing the computers was "David Lancaster." Although Manchester seems to imply that the benefit conferred by Lancaster should be imputed to Manchester, the relevant law does not seem to contemplate that a third party will bestow the benefit.[8] Manchester has not shown that it has conferred a benefit on American Way. Therefore, the prerequisite for an implied contract is absent. Thus, there is no contract, express or implied, between the parties.

B. Tort Duty
Manchester's assertion that American Way owed it a duty in tort arising from a bailment is similarly without merit. A bailment is "a contract, such as arises where one delivers property to another to keep for hire either express or implied." Lee Tire & Rubber Co. v. Dormer, 108 A.2d 168, 170 (Del.1954) (quoting trial judge with approval) (emphasis added). Once the bailment is created, the bailee may be liable in tort to the bailor for any negligence. See Catalfano v. Higgins, 191 A.2d 330, 332 (Del.Super.Ct.1963).
There was no bailment in this case. Delaware law requires either an *246 express or implied contract before a bailment will be found. See Lee Tire, 108 A.2d at 170.[9] However, in this case, there can be no bailment because, as discussed above, there was neither an express nor an implied contract between the parties. Since there was no contract, there can be no bailment.
Manchester argues that it is possible for a third party to owe a duty to another person in the absence of privity. This is true, but as Manchester accedes, this exception only applies where the allegedly negligent party "should recognize [that his due care] is necessary for the protection of a third person or his things." Figgs v. Bellevue Holding Co., 652 A.2d 1084, 1092 (Del.Super.Ct.1994) (citing RESTATEMENT (SECOND) OF TORTS § 324A (1965)). Therefore, foreseeability of the harm to the affected party must be established before liability will be imposed.
Manchester has failed to prove that American Way could have foreseen Manchester's loss. Although Manchester states that American Way "understood the risk to Manchester if it were to release the goods," (D.I. 27 at 12) Manchester does not point to a single fact in the record supporting this position. Manchester cites Cargill, Inc. v. Boag Cold Storage Warehouse, 71 F.3d 545 (6th Cir.1995) and Concors Supply Co., Inc. v. Giesecke Intl., 1988 WL 77662 (Del.Super.Ct. July 20, 1988) in support of its contention that third parties can be held liable. However, both cases are inapposite because in those cases, each of the parties involved was aware of an obligation to the party seeking recovery.[10] By contrast, although the record here reveals that both parties assumed an obligation to Time Warner, it does not indicate that either party was aware of an obligation to the other. American Way simply had no way of knowing that releasing the computers to Time Warner  the recipient indicated on Manchester's bills of lading  would cause a loss to Manchester. The fact that David Lancaster was not a Time Warner employee was similarly unforeseeable. Both parties agree that there was nothing suspicious or unusual about him. Therefore, it cannot be said that American Way was aware of, and therefore had a duty to protect, Manchester's interest.
There was no contract between the parties. Thus, no contractual duty arose. Since there was no contract, there can be no bailment. Furthermore, since the only duties under a negligence theory would have arisen from a bailment, there was no duty in tort, either. Manchester's attempts to assert liability without privity are unpersuasive. For these reasons, American Way did not owe Manchester a duty in either tort or contract, and American Way is entitled to judgment as a matter of law on the duty issue. Since there *247 is no duty, the court will not address the issue of breach. See Bosley v. Kearney R-1 School Dist., 904 F.Supp. 1006, 1019 n. 7 (W.D.Mo.1995) ("If the existence of the duty is not established by summary judgment evidence, the issue of a breach of that duty does not arise."); McNulty v. Comm. of Pennsylvania, 314 F.Supp. 1274, 1275 (E.D.Pa.1970) (failing to reach breach issue in summary judgment case where the court found there was no duty).

C. Estoppel
The court also finds that Manchester is estopped from recovering its loss from American Way. Estoppel is "a judicial remedy by which a party may be precluded by its own act or omission from asserting a right to which it otherwise would have been entitled ...." Genencor International, Inc. v. Novo Nordisk A/S, 766 A.2d 8, 13 (Del.2000). Estoppel is an equitable doctrine and, therefore, favors innocent parties that come before the court with "clean hands." See Haft v. Dart Group Corp., 841 F.Supp. 549, 576 (D.Del.1993) ("[H]e who comes into equity must come with clean hands....") (citations omitted). However, where both litigants are innocent, the burden must fall on the party that was the most active in creating the situation that lead to the loss. See Realty Growth Investors v. Council of Unit Owners, 453 A.2d 450, 457 (Del.1982). In particular, "where, as here, a fraud has been committed by a third party, and the loss must fall on one of two innocent parties, the law lets it rest on the one whose act made possible the perpetration of the fraud." MacAndrews & Forbes Co. v. United States, 23 F.2d 667, 667 (3d Cir. 1928).
Manchester claims that it was innocent in bringing about the loss because it had no way of knowing that "David Lancaster" was not a Time Warner employee. What Manchester overlooks, however, is the fact that American Way was similarly unable to determine. Lancaster's true motivation. Both parties admit that nothing about David Lancaster indicated that he was a sophisticated thief. Based on the record, the court does not see how  short of the possession of psychic ability  either party could have discovered Lancaster's scheme. Thus, it appears that both parties are innocent.
Nevertheless, Manchester must bear the brunt of the loss because it was the most active in creating the situation leading to the loss. Manchester started this chain of events by selling the computers to David Lancaster. In fact, Manchester did this without receiving any assurances of payment. Manchester had first contact with Lancaster and, therefore, the first opportunity to avoid the current disaster. If Manchester had discovered that Lancaster was a fraud, it would never have released the computers to him, American Way would have had nothing to give to him, and this unfortunate situation could have been prevented. Since Manchester is the most culpable between the two innocents, the court finds it is estopped from bringing this claim at this time.[11]

VI. CONCLUSION
For the foregoing reasons, the court concludes that American Way owed no duty to Manchester in either tort or contract. The court also concludes that Manchester is estopped from recovering its loss from American Way. Therefore, the *248 court grants American Way's motion for summary judgment for all defendants.
For these reasons, IT IS HEREBY ORDERED that:
1. American Way's Motion for Summary Judgment (D.I. 24) is GRANTED.
2. Summary judgment be and hereby is granted in favor of American Way, HTS Selling Corporation, and Louderback Transportation and against Manchester Equipment Company.
NOTES
[1] Toshiba usually facilitated the Time Warner-Manchester sales.
[2] The exact language of the clauses reads: "[T]he property described below ... marked consigned and destined a[s] indicated below, which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination." (D.I. 27 at 9.)
[3] The exact language above the signature line reads: "The above mentioned goods received in good order." (D.I. 28 at B-15.)
[4] The parties agree that duty is a question of law. (Although Manchester cites Patton v. Simone, No. CIV.A. 90C-JA-29, 1993 WL 54462, 1993 Del.Super. Ct. LEXIS 40 to state that duty is a mixed question of law and fact, it acknowledges that duty is a question for the court.) In this case, duty is predicated in part upon the existence of a contract. Although courts generally do not grant summary judgment in contract cases where the existence of the contract is at issue, see 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2730.1 (2d ed.1990), since the court must resolve this issue to determine whether there was a duty, the court will do so.
[5] At times, the parties have used the term "privity" when referring to the contractual relationship. Privity is merely "a connection or relationship ... between two or more contracting parties." BLACK'S LAW DICTIONARY 1199 (6th ed.1990) (emphasis added). Thus, privity is dependent upon the existence of a contract. Therefore, the court will limit its discussion to whether a contract existed between the parties.
[6] Furthermore, as American Way points out, the signed freight bill concerned only one of the shipments. Thus, even if the court were to find that the bill of lading was incorporated into the freight bill, the court does not see how this would make American Way responsible for the other two shipments.
[7] Manchester's reliance on Alpine Ocean Seismic Survey v. F.W. Myers Co., 23 F.3d 946 (5th Cir.1994) for the proposition that there should be privity is misplaced. Contrary to Manchester's assertions, the court in Alpine did not find that there was privity between the Alpine and Federal Express, the third party carrier.
[8] See Palmer, 109 A. at 127. The Palmer court stated that an implied contract arises where "one party receives benefits from another person ..." (emphasis added). Id. The use of the words "one" and "another" seems to contemplate dealings between two parties as opposed to multiple parties. See also E. ALLAN FARNSWORTH. CONTRACTS § 2.20 (3d ed.1999) ("Nor can a party that has made a contract with another generally disregard the contract and claim restitution from a third person for performance rendered under the contract, even if the third person has benefitted from that performance."). Of course, in the third party beneficiary context, benefits may be allocated among multiple parties. See Pierce Associates, Inc. v. Nemours Foundation, 865 F.2d 530, 535 (3d Cir.1988); Insurance Co. of North America v. Waterhouse, 424 A.2d 675, 679 (Del.Super.Ct.1980). However, Manchester has disclaimed any third party beneficiary arguments. (D.I. 27 at 8.) The court agrees that Manchester was not a third party beneficiary. In order to be a third party beneficiary of a contract, the contracting parties must have intended to confer a benefit upon the third party. See id. There is nothing in the contract between American Way and "Lancaster" that even alludes to Manchester, and no mention of an intent to benefit that party. Therefore, the court will not discuss the third party beneficiary issue.
[9] Even the law cited by Manchester supports the conclusion that a bailment requires a contract. Manchester quotes Union Stone v. Wilmington Transfer Co., 90 A. 407, 408-09 (Del.Super.Ct.1914) ("A bailment is defined to be a delivery of a thing ... upon a contract, express or implied ...") (emphasis added) and 6 DEL. C. § 7-102(1)(a) (noting that a bailee "acknowledges possession of goods and contracts to deliver them") (emphasis added).
[10] In Cargill v. Boag Cold Storage, 71 F.3d 545 (6th Cir.1995), the defendant knew that it was storing turkeys for plaintiff Cargill's benefit because it had been instructed to do so by the plaintiff's clients. Id. at 548. The court held that Cargill "was readily identifiable as a person likely to be injured, Boag having received the turkeys ... directly from Cargill." Id. at 549. Thus, each party was aware of the others existence. In Concors Supply Co. v. Giesecke Intl. Ltd., 1988 WL 77662 (Del.Super.Ct. July 20, 1988), unlike the present case, the plaintiff and defendant actually contracted with each other for the shipment of goods. Id. at *1.
[11] The court feels the propriety of this result is underscored in light of the fact that Time Warner gave Manchester roughly $100,000.00 to help offset the loss. Although Manchester was harmed by the loss of the computers, it should consider itself fortunate to have recovered a portion of the lost funds.