519 A.2d 202
### FIREMAN'S FUND INSURANCE COMPANY
v.
### The CONTINENTAL INSURANCE COMPANY et al.
No. 79, Sept. Term, 1986.
Court of Appeals of Maryland.
Jan. 9, 1987.

John J. Schneider (Hardwick, Tripoda & Harris, on the brief), Baltimore, for appellant.

Read K. McCafferey (Kathleen M. Boucher and Whiteford, Taylor & Preston, on the brief), Baltimore, for appellees.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

Fireman's Fund Insurance Company, the excess insurance carrier for Publication Press, sued Glen Falls Insurance Company,[1] Publication Press' primary carrier, for neg-

---

1. Glen Falls is a wholly-owned subsidiary of Continental Insurance Company. Underwriters Adjusting Company functions as the claims department for Glen Falls as well as other insurance companies owned by Continental. Fireman's Fund sued all three companies. Because Glen Falls provided the primary coverage involved in this case, we will refer to the appellees as Glen Falls.

ligent and bad faith failure to settle a claim within the primary policy limits. The trial court dismissed this action for failure to state a claim under Maryland law. We must determine whether Maryland recognizes such a cause of action.

## I.

Publication Press had a comprehensive general liability insurance policy with Glen Falls Insurance Company with a limit of $500,000 per occurrence. In addition, Publication Press had an excess insurance policy with Fireman's Fund Insurance Company that covered liability in excess of $500,-000 up to its limit of $2 million. A former employee sued Publication Press for defamation and sought $15 million in compensatory and $15 million in punitive damages. Pursuant to its policy obligations, Glen Falls defended Publication Press in this action. Although its counsel warned Glen Falls that trial could result in a verdict in excess of its policy limits, Glen Falls repeatedly refused to accept settlement offers within those limits.[2] After a jury awarded the former employee $1 million, she settled for $900,000. Glen Falls, as primary insurer, paid its policy limit of $500,000, and Fireman's Fund paid the excess of $400,000.

Fireman's Fund then instituted this action against Glen Falls for negligent and bad faith refusal to settle within the primary policy limits. In Count I, Fireman's Fund based its claim for relief on equitable subrogation to the rights of its insured, Publication Press. Fireman's Fund alleged that Glen Falls knew that testimony from key witnesses could adversely affect its case, that an economist valued plaintiff's lost wage claim at $1.4 million, and that its counsel feared a large verdict for plaintiff. According to Fireman's Fund, Glen Falls disregarded this information and refused

---

**2.** For the purposes of reviewing this motion to dismiss, we accept as true the allegations in Fireman's Fund's complaint.

plaintiff's offers to settle for $300,000 and $450,000. Glen Falls offered first $100,000 and then $200,000 to settle the case. In Count II, Fireman's Fund alleged that Glen Falls owed it a direct duty of good faith and fair dealing. In Count III, Fireman's Fund repeated both the equitable subrogation and direct duty claims and sought punitive as well as compensatory damages.

Glen Falls moved to dismiss Fireman's Fund's suit for failure to state a claim under Maryland law. The trial judge granted the motion, and Fireman's Fund appealed. We granted certiorari prior to argument in the Court of Special Appeals.

## II.

It is well-settled Maryland law that an insured has a cause of action against its insurance company for bad faith refusal to settle a claim within the policy limits. *State Farm v. White,* 248 Md. 324, 236 A.2d 269 (1967); *Sweeten, Adm'r v. Nat'l Mutual,* 233 Md. 52, 194 A.2d 817 (1963). In *Sweeten, supra,* we determined that an insurance company owes a duty to its insureds to attempt to settle claims within the insureds' policy limits. We explained that this duty arises because standard insurance policies give the insurer the exclusive control of the investigation, settlement, and defense of claims against its insureds. These provisions create the potential for conflicts of interest between insured and insurer and thus, impose a fiduciary duty on the insurance company. We recognized that courts had imposed liability on both bad faith and negligence theories. We declined to choose between these theories, however, because the insurance company had conceded liability based on either theory. *Sweeten, supra,* 233 Md. at 55, 194 A.2d 817.

In *White, supra,* 248 Md. at 333, 236 A.2d 269, we adopted the bad faith theory of liability as explained in

*Gaskill v. Preferred Risk Mutual Insurance Co.*, 251 F.Supp. 66, 68 (D.Md.1966), *aff'd*, 371 F.2d 792 (4th Cir. 1967). Thus, we held that an insurer's refusal to settle must have "consist[ed] of an informed judgment based on honesty and diligence" to avoid liability. *White, supra*, 248 Md. at 333, 236 A.2d 269. In addition, we stated that the insurer's negligence, if any, would be relevant to evaluating its good faith. *Id.*

Clearly, Publication Press would have a cause of action against Glen Falls for bad faith refusal to settle a claim within policy limits if it did not have excess liability coverage. Fireman's Fund argues that the doctrine of equitable subrogation allows it to pursue Publication Press' cause of action against Glen Falls. We agree.

Equitable subrogation arises by operation of law when a person pays the debt of another under such circumstances that equity entitles that person to reimbursement. *Finance Co. of Am. v. U.S.F. & G. Co.*, 277 Md. 177, 182, 353 A.2d 249 (1976). To obtain reimbursement, the subrogee must prove the existence of a debt for which another person was primarily liable and payment of that debt to protect its own rights and interests. *Schnader, Inc. v. Cole Build. Co.*, 236 Md. 17, 23, 202 A.2d 326 (1964). If these requirements are met, the doctrine of equitable subrogation entitles the subrogee to all rights of its subrogor. *Finance Co., supra*, 277 Md. at 182, 353 A.2d 249.

Fireman's Fund clearly meets these requirements. Publication Press, Fireman's Fund's insured, owed its former employee $900,000 as a result of her successful tort suit. Fireman's Fund paid $400,000 of that judgment pursuant to its excess liability insurance policy with Publication Press. That policy obligated Fireman's Fund to pay the judgment or risk suit by its insured. Thus, Fireman's Fund paid the debt of another, and that payment protected Fireman's Fund's interests. In such circumstances, the doctrine of

equitable subrogation entitles Fireman's Fund to pursue its insured's cause of action against Glen Falls.

Glen Falls argues that the equities do not support a cause of action by an excess carrier against a primary carrier for bad faith failure to settle a claim. According to Glen Falls, it was not unjustly enriched by its alleged bad faith refusal to settle within the policy limits because it paid its policy limit to satisfy the judgment against Publication Press.

Glen Falls overlooks, however, that its insured, Publication Press, would have a cause of action against it if Publication Press had no excess liability policy. If such an action were successful, Glen Falls would have to pay its insured's portion of the judgment. Thus, if the excess carrier has no cause of action against the primary, the primary insurance company retains whatever it would have to pay to an insured with no excess liability coverage. Under these circumstances, Glen Falls would be unjustly enriched if it wrongfully failed to settle the suit against Publication Press within the primary policy limits. *See Gov't Employees Ins. v. Taylor*, 270 Md. 11, 22, 310 A.2d 49 (1973).

The majority of jurisdictions that have considered the issue allow an excess carrier to sue a primary carrier for bad faith refusal to settle within the primary policy limits.[3] *E.g., Commercial Union Assur. v. Safeway Stores*, 26 Cal.3d 912, 610 P.2d 1038, 164 Cal.Rptr. 709 (1980); *Continental Casualty Co. v. Reserve Ins. Co.*, 307 Minn. 5, 238 N.W.2d 862 (1976); *Allstate Ins. Co. v. Reserve Ins. Co.*, 116 N.H. 806, 373 A.2d 339 (1976); *Fireman's Fund Ins. Co. v. Security Ins. Co.*, 72 N.J. 63, 367 A.2d 864 (1976); *Centennial Ins. Co. v. Liberty Mut. Ins. Co.*, 62 Ohio St.2d

---

**3.** As far as we can determine, only Arizona has refused to recognize a cause of action by the excess carrier against the primary carrier. *Universal Under. Ins. Co. v. Dairyland Mut. Ins. Co.*, 102 Ariz. 518, 433 P.2d 966, 968 (1967). The court noted that the insurance companies were not in privity of contract and that no other principle of law supported such an action. *Id.* The court did not discuss equitable subrogation.

221, 404 N.E.2d 759 (1980); *Ranger Ins. Co. v. Travelers Indem. Co.*, 389 So.2d 272 (Fla.Dist.Ct.App.1980). With the exception of New Hampshire, these states allow recovery on an equitable subrogation theory. The New Hampshire Supreme Court did not use the equitable subrogation analysis because the policy involved in that case had an assignment of claims clause.[4] *Allstate Ins. Co., supra,* 373 A.2d at 340.

Policy considerations also support this result. The public has a strong interest in the prompt and reasonable settlement of lawsuits. If the presence of an excess insurer in the case relieves the primary insurer of a duty to settle, the primary insurer has no incentive to settle the suit within its policy limits. This disincentive to settle obviously would lead to increased insurance and litigation costs. *Valentine v. Aetna Ins. Co.*, 564 F.2d 292, 296–97 (9th Cir.1977); *Reserve Ins. Co., supra,* 238 N.W.2d at 864–65.

### III.

Fireman's Fund also sought relief on the theory that Glen Falls owed it an independent duty of good faith. During oral argument of the appeal, however, Fireman's Fund conceded that if it prevailed on its equitable subrogation theory, we need not consider its alternate theory of liability. Our determination thus makes it unnecessary to consider whether Glen Falls owed an independent duty of good faith to Fireman's Fund in the circumstances of this case.

JUDGMENT DISMISSING THE COMPLAINT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

---

**4.** Publication Press' policy with Fireman's Fund also had such a clause. Fireman's Fund chose not to rely on that clause, however, in pursuing this suit against Glen Falls.