**RUBINS CONTRACTORS, INC., a Maryland Corporation**

v.

**LUMBERMENS MUTUAL INSURANCE COMPANY, General Accident Insurance Company of America, Appellants. (Two Cases)**

Nos. 86–5273, 86–5286.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 10, 1987.

Decided June 16, 1987.

As Amended June 16, 1987.

Walter J. Smith, Jr., Washington, D.C., with whom Katherine A. Day was on the brief for appellant, Lumbermens Mut. Ins. Co.

Austin F. Canfield, Jr., Washington, D.C., for appellant, Gen. Acc. Ins. Co. of America.

Gary Bonnett, Silver Spring, Md., with whom Louis James Morse was on the brief, for appellee.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

Concurring statement filed by Circuit Judge HARRY T. EDWARDS.

WILLIAMS, Circuit Judge:

This case requires us to determine whether, under Maryland law,[1] an automobile insurance policy and a general business liability policy provide coverage for liability arising out of the negligent entrustment of an automobile. Each policy contains language that appears to apply broadly to automobile accidents: the automobile policy in expressing the *coverage* that is provided, the general business liability policy in expressing an *exception* from coverage. We conclude that Maryland would find the language applicable to negligent entrustment liability in both cases. Thus the automobile policy provides coverage and the general business liability policy does not.

## I. BACKGROUND

To guard against vandalism, Rubins Contractors, Inc. arranged to park one of its trucks at the home of Wilbur Jackson, a Rubins employee. Jackson was to drive the truck to and from work but not to use it for personal purposes. On July 9, 1983 Jackson drove the truck to a wedding and

---

1. The basis of jurisdiction is diversity of citizenship. *See* 28 U.S.C. § 1332 (1982). The District Court found Maryland law to be applicable and no party objects to that aspect of its decision. Presumably the court chose Maryland law as being the law that the local courts of the District of Columbia would have selected. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), applies to federal courts in the District of Columbia, and under *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), *Erie* covers conflict of law rules. *See, e.g., Webster v. Sun Co.,* 790 F.2d 157, 160 (D.C.Cir.1986).

was involved in an accident severely injuring Cassandra Gray. Gray sued Rubins on theories of *respondeat superior* and negligent entrustment, ultimately prevailing on both.

Shortly after the accident Rubins informed its automobile insurer, General Accident Insurance Company of America, of its predicament. General Accident agreed to provide Rubins a complete defense but reserved the right not to indemnity Rubins for damages awarded on the negligent entrustment claim. Rubins then turned to its business liability insurer, Lumbermens Mutual Insurance Company, but Lumbermens refused either to defend or indemnify Rubins, citing its policy's exclusion of all damage caused by the operation of automobiles.

Caught between the finger-pointing of the two insurers, Rubins sought a declaratory judgment as to the obligations of each.[2] The District Court found that under Maryland law references to auto liability would be construed liberally when used to express coverage and strictly when used to create an exception from coverage. Accordingly, the District Court ruled that both policies afforded Rubins coverage. General Accident and Lumbermens appeal.[3]

## II. CASE OR CONTROVERSY

Before addressing the merits of this dispute we must find jurisdiction to do so. *See, e.g., Börs v. Preston*, 111 U.S. 252, 4 S.Ct. 407, 28 L.Ed. 419 (1884). Lumbermens originally argued that the issue of coverage for negligent entrustment was not ripe for resolution when presented to the District Court, because a verdict had yet to be rendered on that claim and because General Accident had assumed the defense in the case.[4] Although Lumbermens sought to waive the issue at oral argument, we have an independent obligation to determine whether jurisdiction was proper. *See, e.g., Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934).

Whether a matter is ripe for resolution "turns on 'the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court consideration.'" *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). The two policies' coverage of negligent entrustment of an automobile is a purely legal issue of contract interpretation that will not benefit from further factual development. Thus, the issue was clearly fit for judicial review when presented to the District Court. *See Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985).

The only real question is whether the impact on Rubins of the insurers' disavowal of any liability was "sufficiently direct and immediate as to render the issue appropriate" for resolution by the District Court. *Abbott Laboratories v. Gardner*, 387 U.S. at 152, 87 S.Ct. at 1517. We believe that it was.[5]

---

**2.** Congress has empowered federal courts to award declaratory relief, with narrow exceptions, in any Article III "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201 (Supp. III 1985). The exercise of this jurisdiction is discretionary, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494–96, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942); *Cheseborough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396 (9th Cir.), *cert. denied*, 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 277 (1982), but no party contends that the District Court abused its discretion in this case.

**3.** General Accident and Lumbermens also appeal from the District Court's holding that both policies cover punitive damages. Because the

trial judge in the underlying tort action subsequently directed a verdict dismissing the punitive damages claim, we believe the issue to be moot.

**4.** Had both insurers refused to defend Rubins on the negligent entrustment claim, we would have no doubt that this case was ripe. *E.g., ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3d Cir.1981) ("The justiciability of the parties' obligation to defend the underlying suit is an *a fortiori* case.").

**5.** Because we find that the action was ripe when brought before the District Court, we do not address the effect of the judgment entered

If insurance provided only a right to reimbursement for final judgments entered against the insured, a finding of ripeness might be difficult on the facts of this case.[6] But the policies' protections are considerably broader, including a right to the insurer's provision of a defense and active participation in settlement. *See, e.g., Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 308 Md. 315, 318, 519 A.2d 202, 204 (1987) (insurer has legal duty to attempt to settle claims against insured). An insurer's disclaimer of duty to pay, or reservation of rights, undercuts both of these duties.

In assessing how much to invest in litigative effort, an insurer is bound to consider its exposure. If the insurer believes, for example, that even in the event of an adverse judgment against the insured its chance of actually having to pay is only one in three, it will surely invest less effort in defense than if coverage were certain. Of course its laxity might give rise to a claim by the insured for partial breach of the duty to defend, and fear of such a lawsuit would in itself constrain the laxity. But in the meantime the insurer's conduct has exposed the insured to uncertainty where he sought certainty. Moreover, as litigation strategy is complex and subtle, a remedy based on an after-the-fact evaluation would be dicey to say the least; this would dilute the remedy's capacity to prevent insurer laxity.

A reservation of rights on coverage may affect the insurer's pursuit of its settlement duties even more directly.[7] The process of defense is interwoven with the process of settlement and payment. *See Fireman's Fund*, 308 Md. 315, 318, 519 A.2d 202, 204. Indeed, General Accident's posture—agreeing to defend but repudiating any duty to indemnify—seems to us inherently contradictory. As the Third Circuit recently noted, the insurer's duties encompass an obligation to *pay* the settlement amounts agreed on. *ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 823 (3rd Cir.1981) (finding that both the failure to defend and the disavowal of any duty to indemnify rendered a dispute over coverage an actual controversy ripe for resolution before issues of underlying liability were decided).[8] *See also Fireman's Fund*, 308 Md. at 318, 519 A.2d at 204 (under Maryland law insurer has duty to attempt to settle claims within policy limits). It seems inescapable that uncertainty over coverage would skew the settlement process, *see ACandS*, 666 F.2d at 823; at oral argument counsel for Lumbermens conceded as much.[9]

In sum, to require Rubins to proceed without knowing if the insurance policies cover the negligent entrustment claim would prolong the insured's uncertainty

---

against Rubins during the pendency of this appeal.

**6.** Even this is not clear. Fed.R.Civ.P. 14(a) permits a defendant to implead a third party "who is or may be liable to him for all or part of the plaintiff's claim against him." Courts have found no jurisdictional barrier to deciding whether indemnity lies before determining whether the underlying liability actually exists. *See Williams v. Ford Motor Credit Co.*, 627 F.2d 158, 160–61 (8th Cir.1980).

**7.** The extent to which General Accident has committed itself to participate in settlement negotiations is not clear from the record. Lumbermens has clearly repudiated any such duty.

**8.** *ACandS* appears to call into question *Nationwide Mut. Ins. Co. v. Fidelity & Cas. Co.*, 286 F.2d 91 (3d Cir.1961), an earlier case of the same circuit holding that the district court lacked jurisdiction to issue a declaratory judgment until the facts of liability (involving complex petitions of multiple parties and theories) were established.

**9.** The insurers have called our attention to *Salus Corp. v. Continental Cas. Co.*, 478 A.2d 1067 (D.C.1984), which finds, under the circumstances there present, that it would be premature and inappropriate to resolve the coverage issue prior to trial on substantive liability. As no Article III case or controversy is required for the District of Columbia courts' jurisdiction, *Palmore v. United States*, 411 U.S. 389, 398–99, 93 S.Ct. 1670, 1676–77, 36 L.Ed.2d 342 (1973), the decision does not bear on that issue. Insofar as *Salus* represents a local rule giving an insurance company a defense to such claims as the present one, and assuming *arguendo* that *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), would require us to apply it, we note that at oral argument counsel for Lumbermens waived any such defense and that General Accident has invoked *Salus* only with respect to the claim for punitive damages, which, as noted above, we believe to be moot.

over coverage and distort the insured's conduct in defense and settlement—a palpable and considerable hardship to Rubins. We therefore conclude that the coverage issue is ripe for resolution.

## III. MERITS

The District Court found Rubins entitled to indemnity under both policies for liability arising out of negligent entrustment of an automobile. We address the automobile and general business liability policies in turn.

### A. *Automobile Policy.*

■ The General Accident policy provides that General Accident "will pay all sums the insured legally must pay as damages because of bodily injury or property damage ... caused by an accident and resulting from the ownership, maintenance or use of a covered auto." Policy No. BAP 34-68-44, Part IV(A) (emphasis deleted). General Accident essentially argues that damages awarded on the theory of negligent entrustment "result[ed] from" Rubins's negligent business decision to entrust the vehicle to Jackson and not from the "use" of the vehicle.[10] We see no basis for such a crabbed reading of the policy.

The quoted language seems naturally to encompass the liability in question. The "bodily injury" undoubtedly "result[ed] from" "use" of the truck. The use was Jackson's, of course, but the policy does not require that it be the insured's. Conceivably one might parse the sentence as providing coverage for "sums the insured legally must pay as damages ... resulting from the ownership, maintenance or use of a covered auto," *i.e.*, attaching the "resulting from" clause to damage liability rather than to injury. Indeed, this may be a bet-

ter reading, for it is hard to see how bodily injury could ever result from "ownership" of an auto. But this analysis would not help General Accident, for the damage liability can be seen to have resulted from Rubins's ownership of the truck.

In fact, General Accident offers no detailed construction of the language at all. Rather, it simply relies on cases giving an extremely narrow reading to similar language where it appears as an *exception* in a liability policy. In so doing, courts have clearly strained to assure coverage. For the reasons developed below, we believe Maryland would not make such a linguistic stretch even in that, more appealing, context. We are quite confident it would not do so in order to curtail coverage. Although Maryland resists the proposition that insurance contracts are to be construed "most strongly" against the insurer, it does apply to insurance cases the general maxim of construing contracts against the drafting party. *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Shirer*, 224 Md. 530, 536–37, 168 A.2d 525, 528 (1961).[11] We have no doubt that Maryland would find coverage under the automobile policy.

### B. *General Business Liability Policy.*

■ The Lumbermens policy broadly covers "all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage." Policy No. MP–101841 § B(I). It is agreed that this affirmative language would cover Rubins's liability for negligent entrustment to Jackson unless coverage is negated by an exclusion for "bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading

**10.** General Accident's brief suggests that as soon as negligent entrustment occurred, the truck would cease to be a "covered auto." It offers no analytical or precedential support for this view.

**11.** The court there states:
Maryland has not adopted the rule of many jurisdictions that an insurance policy is to be construed most strongly against the insurer. We follow the rule that the intention of the parties is to be ascertained if reasonably pos-

sible from the policy as a whole.... However, if the insurance company, in attempting to limit coverage ... failed to make its intended meaning clear and drew an ambiguous clause, that ambiguity would be resolved against it as the one who drafted the instrument, as is true in the construction of contracts generally.
*Pennsylvania Threshermen*, 224 Md. at 536–37, 168 A.2d at 528 (citations omitted).

or unloading of ... any automobile ... owned ... by ... any Insured." *Id.* § B(I)(A). Lumbermens argues that the bodily injury in question resulted from "use" of an automobile, so that any liability, whether on a theory of negligent entrustment or any other theory, is clearly excluded. We believe that Maryland would accept Lumbermens's contention.

A split exists among jurisdictions that have considered whether liability policies with similarly worded exclusions cover the negligent entrustment of a vehicle. *See generally* Annotation, *Construction and Effect of Provision Excluding Liability for Automobile-Related Injuries or Damage from Coverage of Homeowner's or Personal Liability Policy,* 6 A.L.R.4th 555 (1981). Many decisions, especially the more recent, *see Fillmore v. Iowa Nat'l Mut. Ins. Co.,* 344 N.W.2d 875, 878–80 (Minn.Ct.App.1984), take the view that since operation or use of a motor vehicle is a necessary component of liability, the exclusion applies, *see, e.g., State Farm Fire & Cas. Co. v. McGlawn,* 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980) (collecting cases). This line of decisions includes the one case we have been able to locate that addresses the coverage of a *business* liability policy. *Ruggerio v. Aetna Life & Cas. Co.,* 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985). Most of such cases refer to "negligent" operation as being an essential part of the plaintiff's claim, *see, e.g., Cooter v. State Farm Fire & Cas. Co.,* 344 So.2d 496, 498 (Ala.1977), but we see no reason why the principle would not apply even if the liability arose without negligence on the part of the vehicle's operator, *see Safeco Ins. Co. v. Gilstrap,* 141 Cal. App.3d 524, 531 n. 5, 190 Cal.Rptr. 425, 430 n. 5 (1983).

Courts finding the exclusion inapplicable have argued that the owner's negligent entrustment is an independent and necessary component of the negligent entrustment tort; therefore, say such courts, the liability does not arise or result from the ownership or use of the automobile. *See, e.g., United Fire & Cas. Co. v. Day,* 657 P.2d 981 (Colo.Ct.App.1982) (collecting cases).[12] Among the cases brought to our attention, this view has typically appeared in situations where the defendant evidently lacked any other insurance. *See, e.g., id.; Upland Mut. Ins., Inc. v. Noel,* 214 Kan. 145, 519 P.2d 737 (1974). The decisions rely heavily on general maxims to the effect that insurance policies are construed most strictly against the insurer. *See, e.g., Shelby Mut. Ins. Co. v. United States Fire Ins. Co.,* 12 Mich.App. 145, 149, 162 N.W.2d 676, 678 (1968).

The view rejecting exclusion seems to us to require a torturing of the language in which the Maryland courts would not be likely to indulge. It seems an extraordinary *non sequitur* to say that liability has *not* resulted from ownership or use of an automobile merely because the tort has a component separate from motor vehicle operation. In effect, courts finding such exclusions inapplicable appear to read the language as if it excluded only liability arising *exclusively* from the *insured's use* of an automobile. Indeed, even so read the language might well be deemed to cover liability from negligent entrustment of an automobile: in *Bankert v. Threshermen's Mut. Ins. Co.,* 105 Wis.2d 438, 443, 313 N.W.2d 854, 857 (1981), *aff'd,* 110 Wis.2d 469, 480, 329 N.W.2d 150, 155 (1985), the court found

---

12. Several of these cases are readily distinguishable. *Republic Vanguard Ins. Co. v. Buehl,* 295 Minn. 327, 204 N.W.2d 426 (1973) (distinguished in *Fillmore v. Iowa Nat'l Mut. Ins. Co.,* 344 N.W.2d 875, 878–79 (Minn.Ct.App.1984)); *Government Employees Ins. Co. v. Chahalis,* 72 Misc.2d 207, 338 N.Y.S.2d 348 (N.Y.Sup.Ct. 1972); and *McDonald v. Home Ins. Co.,* 97 N.J. Super. 501, 235 A.2d 480 (1967), all involved the liability of parents for automobile torts committed by their minor children with motor vehicles *given* to them by the parents. Thus the defendants did not own the vehicles. The clause in question here does not, of course, limit the exclusion to liability arising out of the *insured's* ownership, so the distinction may make no difference, but it does diminish whatever weight Maryland might attribute to sheer numbers of cases finding coverage despite the exclusion. *Cf. Shelby Mut. Ins. Co. v. United States Fire Ins. Co.,* 12 Mich.App. 145, 162 N.W.2d 676 (1968) (finding exclusory language inapplicable to parents' statutory liability for willful and malicious acts committed by minor child living at home, in this case tort committed with stolen vehicle).

entrustment of the vehicle to be a form of "use."

Moreover, all vicarious liability for automobile accidents involves a component in addition to the conduct involved in the auto operation itself. Yet it is not suggested that liability under *respondeat superior* is outside such exclusions.[13] Nor should it make a difference that the extra component here involves "negligence." Vicarious liability is not wholly removed from concepts of fault: at least one of its underlying principles has been the superior opportunity of the principal to avert accidents—by better training of its personnel, for example. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Torts* 500–01 (5th ed. 1984).

The exclusion is framed in terms of the instrumentality causing harm. Ordinary usage suggests no reason to suppose that the parties intended to qualify the exclusion by introducing a factor to which it makes no reference whatsoever—the theory underlying liability.

Maryland has yet to take a position on this issue, but we believe that it would adopt the majority view and find the Lumbermens policy inapplicable. As noted above, Maryland has rejected the policy of construing insurance policies "most strongly against the insurer" in favor of "the rule that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole." *Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co. v. Shirer*, 224 Md. at 536–37, 168 A.2d at 528. The exclusion in the Lumbermens policy is broadly worded and indicates that the policy was not intended to cover any injury resulting from the use of an automobile, irrespective of the theory on which liability rests. The prevalence of form policies, some applying exclusively to automobile accidents and others disclaiming them in broad terms, furthers this conclusion. *Cf.*

*Insurance Co. of N. Am. v. Waterhouse*, 424 A.2d 675, 682 (Del.Super.Ct.1980) (applying New Jersey law). Maryland has stressed the public interest in the "prompt and reasonable settlement of lawsuits" and in averting "increased insurance and litigation costs." *Fireman's Fund*, 308 Md. at 321, 519 A.2d at 205. We believe that these concerns would lead it to avoid the sort of strained construction of insurance contracts that would be necessary to find coverage under the policy.

Our decision to address a question of first impression under Maryland law is not one we undertake lightly. The issue in this case is of the type the Supreme Court had in mind when extolling the virtues of certification, *see Lehman Bros. v. Schein*, 416 U.S. 386, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974), and Maryland has the statutory procedures necessary to permit certification, Md.Cts. & Jud.Proc.Ann. §§ 12–601 to 12–609 (1984). However, because the posture of the case mandates prompt resolution of this issue—the jury has already rendered a verdict against Rubins on the negligent entrustment claim—we believe it appropriate to forego certifying the matter.

\* \* \* \* \* \*

The finding below that the General Accident policy covers damages resulting from the negligent entrustment claim is affirmed; the finding that the Lumbermens policy also applies is reversed. General Accident shall pay Rubins's and Lumbermens's costs on appeal.

*It is so ordered.*

HARRY T. EDWARDS, Circuit Judge, concurring:

I concur only in the judgment in this case. In particular, because I find no significant issue on "case or controversy" or "ripeness," *see, e.g., ACandS, Inc. v. Aetna Cas. & Sur. Co.*, 666 F.2d 819, 822–23

---

**13.** All of the relevant cases we have located except for *Ruggerio v. Aetna Life & Cas. Co.*, 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985) (exclusion covers negligent entrustment), involve homeowners liability policies and not business liability policies. We think that even jurisdictions finding coverage under the former type of policy might hesitate to extend the rule to business liability policies, as the exclusionary provisions of the latter surely encompass automobile liability based on *respondeat superior* and, as noted in the text, no obvious basis exists for distinguishing that from negligent entrustment.

(3d Cir.1981), I do not subscribe to any of the discussion or opinions expressed in Part II of Judge Williams' opinion.