STANDARD MUTUAL INSURANCE
COMPANY, Plaintiff–Appellee,

v.

Elodie L. BAILEY, Charlotte A. Cook,
Charles E. Cook and Christopher J.
Cook, Defendants–Appellants.

No. 88–1302.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 29, 1988.

Decided Jan. 30, 1989.

As Corrected Feb. 17, 1989.

Steven R. Fox, Gray, Robinson, Eckert & Ryan, Indianapolis, Ind., for defendants-appellants.

John T. Lorenz, Kightlinger & Gray, Indianapolis, Ind., for plaintiff-appellee.

Before BAUER, Chief Judge, and POSNER and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

Defendants-appellants Charlotte Cook, Charles Cook and Christopher Cook ("the  Cooks") appeal the district court's grant of summary judgment in favor of the plaintiff-appellee Standard Mutual Insurance Company ("Standard"). Standard filed this action seeking a declaratory judgment that a motor vehicle exclusion clause in its homeowners' insurance policy issued to Joseph and Julie McCoy excluded coverage of the Cooks' claim of negligent entrustment of a motor vehicle against the defendant Elodie Bailey, an insured under the policy. We affirm.

## I.

On October 10, 1984, Robert Jones, driving an automobile owned by Elodie Bailey, struck nine-year-old Christopher Cook while he was riding his bicycle. As a result of this collision, Cook sustained severe bodily injuries. On February 11, 1985, Christopher and his parents, Charlotte and Charles Cook, filed suit in Hancock County, Indiana, for damages against Jones and Bailey. In their complaint, the Cooks alleged that Bailey negligently entrusted her automobile to Jones, who in turn struck Christopher while operating the vehicle in a negligent manner.

At the time of the accident, Bailey had an automobile insurance policy with the Farm Bureau Insurance Company. Pursuant to the terms of that policy, Farm Bureau provided Bailey with a defense to the Cooks' state court action. Also in force at the time of the mishap was a homeowners' insurance policy Standard had issued to Joseph and Julie McCoy. For purposes of this appeal, it is undisputed that Bailey, the mother of Joseph McCoy, was a resident of her son's household and, thus, an "insured" under the terms of the homeowners' insurance policy issued by Standard.[1] The policy contains a provision entitled "Coverage E–Personal Liability." The terms of this coverage provide, in pertinent part:

---

1. In the district court, Standard argued that Bailey was not a resident of the McCoys' household, and therefore did not come within the definition of "insured" in the homeowners' policy issued to the McCoys. After an evidentiary hearing the district court ruled that Bailey was a resident in her son's household, and thus, an "insured" under the policy. On appeal, however, Standard does not raise the issue of whether the district court erred in holding that Bailey was a resident of the McCoy household, and an "insured" under the McCoys' homeowners' policy. Consequently, the district court's finding on this issue is conclusive.

"If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage, we will ... pay up to our limit of liability for the damages for which the insured is legally liable."

The policy also contains language, commonly referred to as a motor vehicle exclusion, relating to this coverage which reads:

"Coverage E–Personal Liability and Coverage F–Medical Payments to Others do not apply to bodily injury or property damage:

\* \* \* \* \* \*

e. arising out of the ownership, maintenance, use, loading or unloading of:

\* \* \* \* \* \*

(2) a motor vehicle owned or operated by, or rented or loaned to any insured...."

On November 4, 1986, Standard commenced this declaratory judgment action in the United States District Court for the Southern District of Indiana arguing that under the language of its homeowners' policy it had neither a duty to defend Bailey nor an obligation to pay any judgment against her in the negligent entrustment action filed by the Cooks. On March 31, 1987, Standard filed a motion for summary judgment alleging that its homeowners' policy, as a matter of law, clearly and unmistakenly excluded coverage for the Cooks' claim of negligent entrustment of the motor vehicle. The Cooks also filed a motion for summary judgment on April 29, 1987.

On November 5, 1987, the district court granted the Cooks' motion for summary judgment and denied Standard's motion holding that the motor vehicle exclusion in Standard's policy was inapplicable to the Cooks' negligent entrustment claim. In granting the Cooks' motion, the district court expressly relied on *State Farm Fire & Casualty Co. v. Lather*, No. IP 83–561–C (S.D.Ind. Sept. 25, 1984),[2] an unpub-

lished district court opinion holding that a provision in a homeowners' policy similar to the exclusionary clause in this case which excluded coverage for motor vehicle injuries did not exclude liability arising out of a claim of negligent entrustment of a motor vehicle. Subsequent to the district court's entry of summary judgment in favor of the Cooks, Standard filed a motion for reconsideration of the court's ruling in light of *Great Central Insurance Co. v. Johnstone*, No. IP 86–1035–C (S.D.Ind. July 16, 1987), another unpublished district court case. In *Johnstone*, the district court held that a claim of negligent entrustment fell within an exclusionary provision in a business liability policy, also similar to the exclusion in this case, which excluded coverage for automobile-related injuries. Concluding that the holdings in *Lather* and *Johnstone* were irreconcilable, the district court granted Standard's motion to reconsider its prior grant of summary judgment for the Cooks. On February 2, 1988, the district court, reversing its prior decision, granted Standard's motion for summary judgment and denied the Cooks' motion finding that negligent use of a motor vehicle is an essential element of a negligent entrustment claim under Indiana law. Thus, the provision in Standard's homeowners' insurance policy excluding claims arising out of the use of a motor vehicle owned by any insured was applicable to the Cooks' claim of negligent entrustment against Bailey. The Cooks filed this appeal alleging that the district court erred in granting Standard's motion for summary judgment because the language in Standard's policy does not clearly and unmistakenly exclude or bar a claim of negligent entrustment from coverage under the terms of the policy.

## II.

Both the Cooks and Standard admit that the Indiana state courts have not addressed

---

**2.** We caution and remind the district judges to follow the rule of this circuit prohibiting the citation of unpublished opinions as precedent: "Unpublished order[s] ... except to support a claim of res judicata, collateral estoppel or law of the case, shall not be cited or used as precedent ... by any [federal court within the circuit] for any purpose." Circuit Rule 53(b)(2)(iv).

the issue of whether a claim of negligent entrustment is excluded from coverage by a provision in a liability insurance policy which excludes "bodily injury ... arising out of the ownership, maintenance, use, loading or unloading of ... a motor vehicle owned or operated by ... any insured...."[3] Thus, we are faced with the task of attempting to rule in this case according to Indiana law as we believe the Indiana courts would probably resolve it. *See, e.g., Sur v. Glidden–Durkee,* 681 F.2d 490 (7th Cir.1982). In making such a determination, we look to Indiana insurance law, as well as decisions from other jurisdictions which have addressed this issue.

Under Indiana law, an insurance policy is a contract between the insurer and the insured; thus, insurance contracts are subject to the same rules of interpretation as are other contracts. *Eli Lilly & Co. v. Home Insurance Co.,* 482 N.E.2d 467, 470 (Ind.1985). These general rules of construction are outlined in *Huntington Mutual Insurance Co. v. Walker,* 181 Ind. App. 618, 392 N.E.2d 1182 (1979):

"It is an elementary rule of construction that one should give words their ordinary meaning.... When interpreting the provisions of an insurance policy, the court cannot extend the coverage delineated by clear and unambiguous language in the insurance contract.... However, it is well-settled that where the language of an insurance contract is so ambiguous as to be susceptible of more than one interpretation, the court will adopt a construction most favorable to the insured.... This is all the more so where the particular provision in dispute purports to create an exclusion from coverage under the general terms of the policy.... A condition or exclusion in an insurance contract, therefore, in order to be effective, must clearly and unmistakingly bring within its scope the particular act or omission that will bring the condition or exclusion into play.... Coverage will not be excluded or destroyed by an exclusionary condition unless such clarity exists."

*Id.* 392 N.E.2d at 1185 (citations omitted).

■ At the outset, we hold that the words "Coverage E—Personal Liability ... do[es] not apply to bodily injury ... arising out of the ownership, maintenance, use, loading or unloading of ... a motor vehicle owned or operated by ... any insured" are not ambiguous. Clearly, this language in the exclusionary provison of Standard's homeowners' policy was drafted with the express intention of excluding from coverage injuries associated with a motor vehicle owned by the insured.[4] Therefore, the rel-

---

**3.** As we noted, *supra,* there are two unpublished decisions, improperly cited as legal precedent, from the United States District Court for the Southern District of Indiana in which the court, applying Indiana law, addressed this issue and reached contrary results. *Compare State Farm Fire & Cas. Co. v. Lather,* No. IP 83–561–C (S.D. Ind. Sept. 25, 1984) (exclusionary clause inapplicable to negligent entrustment claim), *with Great Central Ins. Co. v. Johnstone,* No. IP 86–1035–C (S.D.Ind. July 16, 1987) (exclusionary clause applicable to negligent entrustment claim).

**4.** The Cooks argue that the contrary results reached in *Lather* and *Johnstone, see supra* note 3, strongly indicate that reasonably intelligent persons can disagree about the meaning of the exclusionary provision in Standard's homeowners' policy; therefore, they contend, the policy is ambiguous and should be construed in their favor. The Cooks obviously overlook the fact that the *Lather* court expressly found, and the *Johnstone* court in *dicta* stated, that the policy exclusion was unambiguous, and thus, should be interpreted giving the words of the exclusion their plain and ordinary meaning.

Moreover, carrying the Cooks' argument to its logical conclusion, an insurance policy must be deemed ambiguous in Indiana whenever there is a split in authority on the scope of an insurance policy's coverage and the exclusions therefrom. Thus, according to this logic, the fact that jurisdictions which have considered whether a negligent entrustment claim arises out of the ownership, use, maintenance, loading or unloading of a motor vehicle owned by an insured have reached contrary results would be a sure winner for the Cooks in this case. Such is clearly not the law in Indiana. In *American States Ins. Co. v. Aetna Life & Cas. Co.,* 177 Ind.App. 299, 379 N.E.2d 510 (1978), the court of appeals, in considering a split in authority on the question of whether a negligent representation, made in conjunction with a sale or service and contributing to an accident causing injury, is covered under a standard Premises Hazard clause, stated: "'The mere existence of a controversy as to the meaning of an insurance policy does not establish that ... an ambiguity exists.'"

evant question becomes whether the exclusionary language, given its plain and ordinary meaning, clearly and unmistakenly brings within its scope a claim of negligent entrustment.[5]

■ The Cooks, in an attempt to expand the language of the liability insurance contract, argue that their claim against Bailey does not come within the scope of the exclusionary language of the insurance contract since, according to them, liability is based solely on the act of entrusting her automobile to Jones. They argue that this act is unrelated to the ownership, maintenance, use, loading or unloading of the motor vehicle owned by Bailey. They further argue that the words "bodily injury ... arising out of the ownership, mainte-

nance, use, loading or unloading of ... a motor vehicle owned or operated by ... any insured" apply only to claims arising out of the negligent operation of a motor vehicle and do not apply to exclude coverage for an act of negligent entrustment of a motor vehicle to another. After due consideration of the Cooks' contentions, we find them unpersuasive because they mischaracterize the tort of negligent entrustment in Indiana.

In Indiana, a cause of action for negligent entrustment of a motor vehicle requires that the plaintiff establish that the defendant owned or controlled the motor vehicle and permitted a third person to use the vehicle knowing that the third person will use the vehicle in a negligent manner

---

*Id.* 379 N.E.2d at 516 (quoting *Taylor v. American Underwriters, Inc.,* 170 Ind.App. 148, 352 N.E.2d 86, 89 (1976)).

5. In addition to their contentions that the exclusionary clause in this case is ambiguous, *see supra* note 4, the Cooks argue that in any event, under Indiana law exclusionary clauses are always to be construed strongly against the drafter of the language in the contract, the insurer. In support of this argument the Cooks cite *Asbury v. Indiana Union Mut. Ins. Co.,* 441 N.E.2d 232, 242 (Ind.Ct.App.1982). Although *Asbury* states the above proposition, we do not believe this to be a correct statement of the law regarding exclusionary clauses in Indiana. As an initial matter, in enunciating the above rule of construction, the *Asbury* court cites only *U.S.F. & G. Ins. Co. v. Brannan,* 22 Wash.App. 341, 589 P.2d 817 (1979). Although this rule applying to exclusionary clauses is clearly the law in the state of Washington, *see, e.g., Phil Schroeder, Inc. v. Royal Globe Ins. Co.,* 99 Wash.2d 65, 659 P.2d 509 (1983), *modified* 101 Wash.2d 830, 683 P.2d 186 (1984), our research reveals no other Indiana case prior or subsequent to *Asbury* espousing such a rule of construction.

Moreover, Indiana courts subsequent to *Asbury* have repeatedly stated that there *must* be an ambiguity in the language of an insurance policy for a court to hold that the policy, including its exclusions, should be strictly construed against the insurer. *See Eli Lilly & Co. v. Home Ins. Co.,* 482 N.E.2d 467, 470 (Ind.1985) ("In order to apply the rules of construction favoring the nondrafter of insurance contract terms, the language must be ambiguous or of doubtful meaning."); *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind.1985) ("Although special rules of construction of insurance contracts have been developed due to disparity in bargaining power between insurers and the insureds, if a contract is clear and unambiguous, the language must be given its plain meaning."); *Miller v.*

*Dilts,* 463 N.E.2d 257, 265 (Ind.1984) ("The terms of an insurance policy should be liberally construed in favor the insured *only* if there is an ambiguity in the policy's language.") (emphasis added); *Interstate Auction, Inc. v. Central Nat. Ins. Group Inc.,* 448 N.E.2d 1094, 1098 (Ind.Ct. App.1983) ("Where an insurance contract is ambiguous ..., it is to be interpreted most favorably to the insured.... An unambiguous policy, on the other hand, must be enforced according to its terms, ... *even if this results in a limitation of the insurer's liability.*") (emphasis added) (citations omitted). Because we find no ambiguity in the exclusionary language at issue in this case, we have no occasion to construe the policy against Standard notwithstanding the rule stated in *Asbury.*

Even if we were to follow the *Asbury* rule, our ultimate conclusion in this case would remain unchanged. As the California Court of Appeals aptly stated in *Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 532–33, 190 Cal.Rptr. 425, 431 (1983):

"Although we construe all provisions, conditions or exceptions that tend to limit liability strictly against the insurer ..., strict construction does not mean strained construction.... We may not, under the guise of strict construction, rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.... 'We hold that, strictly construed or not, this exclusionary language removes negligent entrustment of [a motor vehicle] ... from the coverage of the policy.' ..."

(Citations omitted). *Accord Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 492 A.2d 1028, 1032 (App.Div.1985); *Bankert v. Threshermen's Mut. Ins. Co.,* 105 Wis.2d 438, 444–45, 313 N.W.2d 854, 857 (Ct.App.1981), *aff'd sub nom. Bankert by Habush v. Threshermen's Mut. Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150 (1983).

so as to endanger persons or property. *Lather v. Berg,* 519 N.E.2d 755 (Ind.Ct. App.1988); *Ellsworth v. Ludwig,* 140 Ind. App. 437, 223 N.E.2d 764 (1967). The Indiana courts have recognized that "the theory of negligent entrustment of an automobile is an exception to the common law that one who owns an automobile and lends it to another does not become liable for the lendee's negligent acts while the latter is operating the vehicle." *Campbell v. Board of Trustees,* 495 N.E.2d 227 (Ind.Ct. App.1986). Our review of these cases leads us to the conclusion that negligent entrustment of a motor vehicle in Indiana is not independent of, but rather inextricably intertwined with, the more general concepts of ownership, operation, and use of a motor vehicle. It is also apparent that liability on the part of the entrustor is not triggered until the entrustee acts in a negligent manner while operating the motor vehicle. Thus, giving the words of the exclusionary clause their plain and ordinary meaning, we can only conclude that the

Cooks' negligent entrustment claim against Bailey arises out of the ownership and use of the motor vehicle owned by Bailey and is therefore clearly excluded from the coverage of the homeowners' policy under which Bailey was an insured.

Our interpretation of Indiana law draws support from the holdings of numerous courts in other jurisdictions that have considered the issue in the context of similarly worded policy exclusions. Of the thirty-one jurisdictions that have considered the question, twenty-eight in number have held the policy exclusion at issue applicable to claims of negligent entrustment.[6] Although several divergent theories have been employed by the various courts, the cases in which the court analyzes the tort of negligent entrustment, as we do here, present the most well reasoned and persuasive rationale for excluding a claim of negligent entrustment from the coverage of a liability insurance policy.[7] For exam-

---

6. Courts in the following states have held policy exclusions similar to the provision in Standard's policy in this case, applicable to a claim of negligent entrustment: Alabama: *Cooter v. State Farm Fire & Cas. Co.,* 344 So.2d 496 (Ala. 1977); Alaska: *Allstate Ins. Co. v. Ellison,* 757 F.2d 1042 (9th Cir.1985) (predicting Alaska law); Arizona: *Lumbermens Mut. Cas. Co. v. Kosies,* 124 Ariz. 136, 602 P.2d 517 (Ct.App.1979); Arkansas: *Aetna Cas. & Sur. Co. v. American Mfrs. Mut. Ins. Co.,* 261 Ark. 326, 547 S.W.2d 757 (1977); California: *Safeco Ins. Co. v. Gilstrap,* 141 Cal.App.3d 524, 190 Cal.Rptr. 425 (1983); Delaware: *Insurance Co. of North America v. Waterhouse,* 424 A.2d 675 (Del.Super.Ct.1980); Florida: *Gargano v. Liberty Mut. Ins. Co.,* 384 So.2d 220 (Fla.Dist.Ct.App.1980); Georgia: *Grange Mut. Cas. Co. v. King,* 174 Ga.App. 716, 331 S.E.2d 41 (1985); *see also, Southeastern Fire Ins. Co. v. Heard,* 626 F.Supp. 476 (N.D.Ga.1985) (predicting Georgia law); Hawaii: *Hawaiian Ins. & Guar. Co. v. Chief Clerk,* 713 P.2d 427 (Hawaii 1986); Illinois: *State Farm Fire & Cas. Co. v. McGlawn,* 84 Ill.App.3d 107, 39 Ill.Dec. 531, 404 N.E.2d 1122 (1980); Louisiana: *Picou v. Ferrara,* 412 So.2d 1297 (La.1982); Maine: *American Universal Ins. Co. v. Cummings,* 475 A.2d 1136 (Me.1984); Maryland: *Pedersen v. Republic Ins. Co.,* 72 Md.App. 661, 532 A.2d 183 (1987); *see also Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co.,* 821 F.2d 671 (D.C.Cir. 1987) (predicting Maryland law); Massachusetts: *Barnstable County Mut. Fire Ins. Co. v. Lally,* 374 Mass. 602, 373 N.E.2d 966 (1978); Michigan: *Michigan Mut. Ins. Co. v. Sunstrum,* 111 Mich.App. 98, 315 N.W.2d 154 (1981);

Minnesota: *Fillmore v. Iowa Nat. Mut. Ins. Co.,* 344 N.W.2d 875 (Minn.Ct.App.1984); Missouri: *Shelter Mut. Ins. Co. v. Politte,* 663 S.W.2d 777 (Mo.Ct.App.1983); Nevada: *Senteney v. Fire Ins. Exch.,* 101 Nev. 654, 707 P.2d 1149 (1985); New Hampshire: *Hanover Ins. Co. v. Grondin,* 119 N.H. 394, 402 A.2d 174 (1979); New Jersey: *Williamson v. Continental Cas. Co.,* 201 N.J.Super. 95, 492 A.2d 1028 (App.Div.1985); New York: *Ruggerio v. Aetna Life & Cas. Co.,* 107 A.D.2d 744, 484 N.Y.S.2d 106 (1985); Ohio: *Potosky v. Fejes,* 23 Ohio Misc.2d 45, 492 N.E.2d 494 (1986); Oregon: *Farmers Ins. Group v. Nelsen,* 78 Or.App. 213, 715 P.2d 492 (1986); Pennsylvania: *Pulleyn v. Cavalier Ins. Corp.,* 351 Pa. Super. 347, 505 A.2d 1016 (1986); South Dakota: *Great Cent. Ins. Co. v. Roemmich,* 291 N.W.2d 772 (S.D.1980); Texas: *Fidelity and Guar. Ins. Underwriters v. McManus,* 633 S.W.2d 787 (Tex. 1982); Washington: *Farmers Ins. Group v. Johnson,* 43 Wash.App. 39, 715 P.2d 144 (1986); Wisconsin: *Bankert by Habush v. Threshermen's Mut. Ins. Co.,* 110 Wis.2d 469, 329 N.W.2d 150 (1983). *See also LaBonte v. Federal Mut. Ins. Co.,* 159 Conn. 252, 268 A.2d 663 (1970), in which the court held that liability arising from an automobile is excluded whether under a theory of personal negligence, agency, or any other type of vicarious liability. *Id.* 268 A.2d at 666.

7. The other predominant approach among courts considering the present issue is commonly referred to as the "dovetail" theory:

"This theory simply holds that any one occurrence can only be covered by either the

ple, in *Cooter v. State Farm Fire & Casualty Co.*, 344 So.2d 496 (Ala.1977), the Supreme Court of Alabama stated:

> "While the rationale of 'negligent entrustment' is not founded upon negligence of the driver of an automobile, but upon the primary negligence of the entrustor for supplying an automobile to an incompetent driver, the manifestation of the incompetence of the user is an essential element to the gravamen of the negligent entrustment action. That is to say, but for the incompetent driver's misconduct in the use of the automobile, no liability could result in the entrustor....
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> While liability (apart from coverage) for negligent entrustment is not conditioned upon the entrustor's ownership or use of the vehicle, negligent use by the one to whom it is entrusted is essential to recovery. It is the concurrence of these dual elements—negligent entrustment by the owner or custodian of the instrumentality plus its negligent use by the entrustee—that is missing in the rationale of those cases upholding coverage. Taken literally, this line of reasoning—that negligent entrustment of the vehicle, and not its use, is the basis of insured's alleged liability—the injured party could recover absent any showing that the incompetent to whom the vehicle is entrusted caused the injury by his negligent use of the vehicle. As we have already observed, this does not comport with the elements that make up this tort concept of negligent entrustment."

*Id.* at 497–99.

The Superior Court of Delaware took a similar view in *Insurance Co. of North America v. Waterhouse*, 424 A.2d 675 (Del. Super.Ct.1980):

> "Admittedly, the tort of negligent entrustment involves conduct which, in part, is distinct from the operation of the instrumentality which inflicts the harm. It is the negligent entrusting which creates the unreasonable risk, although the magnitude of the harm may depend upon the dangerous character of the product entrusted.... It is not difficult to envision situations in which the type of instrumentality entrusted, (e.g., a gun or explosive), squares with the insurer's obligation to defend claims asserted against a parent-entrustor under a policy of general liability. But where the parties to a policy of general risk insurance agree to the specific exclusion of an instrumentality which, in operation and usage, is the predominant source of public liability claims, the focus changes. Regardless of when and where the judgment is made to entrust the automobile, the essential triggering element giving rise to the tort is the use of the chosen instrumentality—the automobile. It is this use which is specifically proscribed and, in the normal expectation of the parties to the insuring agreement, separately insured. While it is laudable to attempt an expansive reading of the policy in an effort to provide the insured with maximum coverage, the clear language of the exclusion cannot be tortured to achieve that result."

*Id.* at 682.[8]

There are a minority of jurisdictions holding the exclusion inapplicable to claims of negligent entrustment.[9] However, we

---

automobile or the homeowner's policy—but not both. That mutually exclusive effect is the result of the exclusionary clause of the homeowner's policy acting as the mirror image of the inclusionary clause of the automobile policy. The two coverages dovetail, the one filling the gaps created by the other. Automobile-related occurrences are then within the sole province of the automobile policy." *Pedersen*, 532 A.2d at 189. *See, e.g., Cooter*, 344 So.2d at 497.

**8.** *See also Pedersen*, 532 A.2d at 185–86; *Chief Clerk*, 713 P.2d at 430–31; *Williamson*, 492 A.2d at 1031; *Safeco*, 190 Cal.Rptr. at 427–30;

*McGlawn*, 404 N.E.2d at 1124; *Barnstable*, 373 N.E.2d at 969.

**9.** Courts in the following jurisdictions have held the motor vehicle exclusion inapplicable to a negligent entrustment claim: Colorado: *United Fire & Cas. Co. v. Day*, 657 P.2d 981 (Colo.Ct. App.1982); *see also Douglass v. Hartford Ins. Co.*, 602 F.2d 934 (10th Cir.1979) (predicting Colorado law); Kansas: *Upland Mut. Ins., Inc. v. Noel*, 214 Kan. 145, 519 P.2d 737 (1974); Minnesota: *Republic Vanguard Ins. Co. v. Buehl*, 295 Minn. 327, 204 N.W.2d 426 (1973); New Jersey: *McDonald v. Home Ins. Co.*, 97 N.J.Su-

have no reason to believe that the Indiana courts would adopt the reasoning set forth in these cases. In most instances, courts holding the exclusion inapplicable to negligent entrustment claims have concluded that the language of the exclusion is ambiguous and have construed the exclusion in favor of the insured.[10] In *Rubins Contractors, Inc. v. Lumbermens Mutual Insurance Co.*, 821 F.2d 671 (D.C.Cir.1987), the United States Court of Appeals for the District of Columbia Circuit, applying Maryland law to the same question which is at issue in this case, considered these cases and stated:

> "The view rejecting exclusion seems to us to require a torturing of the language [in the exclusionary clause].... It seems an extraordinary *non sequitur* to say that liability has *not* resulted from ownership or use of an automobile merely because the tort has a component separate from motor vehicle operation. In effect, courts finding such exclusions inapplicable appear to read the language as if it excluded only liability arising *exclusively* from the *insured's use* of an automobile. Indeed, even so read the language might well be deemed to cover liability from negligent entrustment of an automobile....

> \*   \*   \*   \*   \*   \*

per. 501, 235 A.2d 480 (App.Div.1967); New York: *Heritage Mut. Ins. Co. v. Hunter*, 63 A.D. 2d 200, 406 N.Y.S.2d 625 (1978); *Government Emp. Ins. Co. v. Chahalis*, 72 Misc.2d 207, 338 N.Y.S.2d 348 (1972); *Lalomia v. Bankers & Shippers Ins. Co.*, 35 A.D.2d 114, 312 N.Y.S.2d 1018 (1970), *aff'd*, 31 N.Y.2d 830, 339 N.Y.S.2d 680, 291 N.E.2d 724 (1972); West Virginia: *Huggins v. Tri–County Bonding Co.*, 337 S.E.2d 12 (W.Va.1985).

Many of these cases are readily distinguishable from the present case. The most apparent distinction in most of these cases is the language of the exclusion itself. For example, in *Huggins*, the most recent case holding a motor vehicle exclusion clause inapplicable to a negligent entrustment claim, the exclusionary clause in that case provided that the policy did not apply to "the ownership, maintenance, operation or use ... of land motor vehicles." In holding that this language does not foreclose negligent entrustment claims, the West Virginia Supreme Court of Appeals specifically noted the

The exclusion is framed in terms of the instrumentality causing harm. Ordinary usage suggests no reason to suppose that the parties intended to qualify the exclusion by introducing a factor to which it makes no reference whatsoever —the theory underlying liability."

*Id.* at 676–77 (citations omitted) (emphasis in original). We agree with this view of the cases holding the exclusion inapplicable to a negligent entrustment claim. We are convinced that due to the presence of clear, unequivocal and specific contractual language excluding "bodily injury ... arising out of the ownership ... [or] use ... of ... a motor vehicle owned ... by ... any insured," the Indiana courts would not indulge in the strained construction required to bring the Cooks' claim within the coverage of Standard's homeowners' insurance policy. To hold otherwise and to impose such a construction would, in effect, enlarge the terms of the policy beyond those clearly stated in the policy agreed upon by the respective parties to the contract. *Heller v. Equitable Life Assurance Society*, 833 F.2d 1253, 1257 (7th Cir.1987). Standard clearly and unmistakenly excluded from coverage the concepts from which a negligent entrustment claim in Indiana is derived: use and ownership of a motor vehicle. Under Indiana law, this court "cannot ignore the plain wording of an insurance contract.... We will not re-

policy's "lack of any expansive language such as used in other homeowners' policies where the language in the automobile exclusion contains the phrase 'arising out of the ownership, maintenance or use of the vehicle.'" 337 S.E.2d at 17. Similarly, with the exception of the two Colorado cases—*Day* and *Douglass*—every other case holding the motor vehicle exclusion inapplicable to a negligent entrustment claim involved a policy provision lacking the "arising out of" language. We note as a matter of some significance that courts in Minnesota and New York, when presented with a policy exclusion containing the "arising out of" language, held the "arising out of" exclusion applicable to a negligent entrustment claim. *See Fillmore*, 344 N.W.2d at 879; *Ruggerio*, 484 N.Y.S.2d at 107.

**10.** *See, e.g., Day*, 657 P.2d at 983. Because we have previously held that the language of the policy exclusion in this case is clear and unambiguous, this further distinguishes this case from the line of cases holding the exclusion inapplicable to a negligent entrustment claim.

write insurance contracts in order to extend greater coverage than that to which the parties agreed, because ... '[e]ven an insurance company, after all, is entitled to rely on the contracts it signs.'" *Mullen v. Tucker*, 510 N.E.2d 711, 713 (Ind.Ct.App. 1987) (quoting *Farthing v. Life Insurance Co. of North America*, 500 N.E.2d 767, 771 (Ind.Ct.App.1986)). Furthermore, we refuse to impose on an insurer the onerous burden of excluding every conceivable theory of liability. As the United States District Court for the Southern District of Georgia stated: "Obviously, this [burden] is impractical and illogical. So long as the injury arose out of the use, maintenance, or ownership of an excluded instrumentality, the exclusion should prevail." *Southeastern Fire Insurance Co. v. Heard*, 626 F.Supp. 476, 482 (N.D.Ga.1985).[11] As we have in the past, we refuse to indulge in judicial activism in interpreting the language of a clear and unambiguous contract of insurance. *See, e.g., Heller*, 833 F.2d at 1257. Thus, we conclude, as did the district court, that under the facts of this case, the Indiana state courts would hold the language in Standard's automobile exclusion applicable to the Cooks' negligent entrustment claim against Bailey. We therefore hold that summary judgment in favor of Standard is appropriate in this case. Accordingly, the order of the district court granting Standard's motion for summary judgment and denying the Cooks' motion is

AFFIRMED.

---

11. Despite our ultimate conclusion in this case, we find it curious that in view of the plethora of litigation on this issue, the insurance industry has not simply added the word "entrustment" to the standard provision excluding claims "arising out of the ownership, maintenance, use, loading or unloading of a motor vehicle owned by any insured." In Colorado, the only state to hold the "arising out of" language inapplicable to a negligent entrustment claim, *see supra* note 9, the court of appeals held that the insurer's addition of the word "entrustment" to the homeowners' policy exclusion in that case was not in contravention of Colorado's public policy and clearly excluded claims of negligent entrustment and negligent supervision. *See Lahey v. Benjou*, 759 P.2d 855 (Colo.Ct.App.1988).